[No. A017099. First Dist., Div. One. Apr. 12, 1984.]

RENOWN, INC., et al., Plaintiffs and Appellants, v.
HENSEL PHELPS CONSTRUCTION COMPANY et al.,
Defendants and Respondents;
NORTH COAST CELLARS, Real Party in Interest and Respondent.

414

**COUNSEL**

Pillsbury, Madison & Sutro, Noble K. Gregory, William S. Mailliard, Jr., and Kevin M. Fong for Plaintiffs and Appellants.

Stark, Stewart, Wells & Robinson, Robert C. Field, David I. Katzen, Gordon & Rees, Donald W. Rees and S. Mitchell Kaplan for Defendants and Respondents.

No appearance for Real Party in Interest and Respondent.

OPINION

NEWSOM, J.—In 1972 respondent Schaaf-Jacobs-Vinson[1] (Schaaf) entered into a written contract to provide design, architectural, and engineering services for a winery which appellant Souverain Cellars[2] proposed to build in Sonoma County. In 1973 Souverain entered into a written agreement with respondent Hensel Phelps Construction Company (Hensel) under which Hensel was to construct the winery in accordance with the plans and specifications furnished by Schaaf.

Both the design agreement and the construction agreement contained provisions for arbitration of disputes arising thereunder. However, both agreements expressly prohibited a demand for arbitration being made after the date when institution of legal proceedings on any underlying claim would be barred by the applicable statute of limitations. Furthermore, the construction agreement excepted from arbitration those claims which were deemed waived under the agreement by the making or acceptance of final payment.

Construction of the winery commenced in 1973 and work was substantially completed in 1974. Throughout this period appellants monitored the progress of construction through Jerry Graves, a full-time quality auditor employed by appellants to oversee and inspect the design and construction of the winery. Upon completion of construction, appellants made final payment for all work performed.

In 1976 appellants contracted to sell the winery to real party in interest North Coast Cellars. In connection with this sale, appellants warranted that the real property improvements were structurally sound and agreed that warranty disputes would be arbitrated.

In 1978 North Coast complained to appellants about several problems at the winery, including alleged roof defects. In June of 1980 North Coast

---

[1]Subsequent to the filing of this appeal, respondent Schaaf settled with appellants and by order of this court, April 10, 1983, was dismissed as a party to this appeal.

[2]In 1976 Souverain changed its corporate name to Renown; appellant Pillsbury is the parent company of Renown.

obtained a stipulated order for arbitration of its claim that appellants, by virtue of the warranty of structural soundness, were liable for the roof problems. In June of 1981 appellants demanded that respondents Schaaf and Hensel participate in the arbitration to determine whether, as the designer and the builder of the winery, they would be liable to reimburse appellants for such amounts as North Coast might recover. Neither respondent acceded to the arbitration demand.

Appellants thereupon petitioned the trial court for an order compelling respondents to arbitrate and to consolidate the requested arbitration with the existing arbitration proceedings then pending between appellants and North Coast. The trial court dismissed the petition on the grounds that 1) arbitration of the claim against Hensel for roofing defects was waived under the contract by appellants' making final payment to Hensel; and 2) arbitration of the roofing claims against both Hensel and Schaaf was waived under the contract by appellants' failure to demand arbitration before the expiration of the applicable statute of limitations. Since either of such findings is alone sufficient to have warranted dismissal as to remaining respondent Hensel, appellants' burden on appeal is to demonstrate that both are erroneous.

As to the first of the trial court's grounds for dismissal, appellants contend that, as they were unaware of the roof's structural defects until North Coast brought them to their attention in 1978, final payment in 1974 did not constitute a knowing and intelligent waiver of arbitration under the contract.

Code of Civil Procedure section 1281.2 provides in pertinent part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; . . ."

Further, "Waiver of a contractual right to arbitration is ordinarily a question of fact and determination of this question, if supported by substantial evidence, is binding on an appellate court. [Citation.] Under the general rule this question is left to the trial court where there is substantial evidence to support it. However, in cases where the record before the trial court establishes a lack of waiver as a matter of law, the appellate court may reverse a finding of waiver made by the trial court. [Citation.]" (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 185 [151 Cal.Rptr. 837, 588 P.2d 1261].)

■ In the instant case the construction contract provided that "All claims, disputes, and other matters in question arising out of, or relating to, this Contract . . . except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6 . . . shall be decided by arbitration. . . ." Subparagraph 9.7.5 of that agreement provided that the "making of final payment shall constitute a waiver of all claims by the Owner except those arising from . . . faulty or defective work appearing after Substantial Completion. . . ."

The issue is therefore whether the defects complained of were apparent before payment was made (in which case they were waived), or whether they only became so after payment (in which case they were not waived). The trial court, in its statement of decision, found that such defects "were apparent to petitioners upon reasonable inspection and were in fact known to them." Therefore, the issue on appeal, put slightly differently, is whether substantial evidence appears in the record to support such a finding. We are convinced that it does.

Such evidence centers upon the role of Jerry Graves, the full-time construction quality auditor retained by appellants to monitor construction of the winery roof, as set forth in declarations provided by the architect, the project engineer, and the job coordinator for the roofing subcontractor, as well as in Graves' own letter to the architect and an internal report in which he described his activities on the project.

These declarations and exhibits reveal Graves to have been a contractor himself for many years with substantial experience overseeing the construction of built-up roofing systems and with considerable expertise in proper roofing practices. He was closely familiar with the plans and specifications for the winery's roof and, when changes or revisions to them were considered, he was a regular participant in such discussions. On a daily basis, he observed and inspected the methods by which the insulation and roofing materials were applied, devoting approximately 50 "man days" to this task. He regularly devoted substantial time to watching the work and examining and testing the resultant product. He frequently made comments or suggestions concerning the procedures and techniques employed. On one occasion he determined that the type of insulation that was applied to the roof did not bond properly; as a result, work was suspended and the inadequate material was removed from a large portion of the roof. On another occasion he protested in writing that heavy rains had saturated exposed portions of insulation beneath the felt.

From this evidence and the inferences properly drawn therefrom, we are satisfied that substantial evidence exists to sustain the trial court's finding

that such roofing defects as may have existed were apparent to appellants through their employee Graves upon reasonable inspection and were in fact known to them, and that therefore, under the contract, final payment constituted a waiver of those defects.

While this conclusion as to the propriety of the finding on the issue of waiver via final payment is alone sufficient to sustain the trial court's judgment, we nevertheless venture to address appellants' other claim of error.

■■■ Appellants contend that the trial court applied the wrong limitation period, arguing that Code of Civil Procedure section 337.15 (ten-year limitation period for "latent" defects in construction) rather than Code of Civil Procedure section 337.1 (four-year limitation period for "patent" defects in construction) provides the applicable period. They also dispute the application of the latter section to the extent that this application was based upon their employee's (Graves) expertise.

Paragraph 11.2 of the construction agreement provided in pertinent part that "in no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim . . . would be barred by the applicable statute of limitations."

Code of Civil Procedure section 337.1 provides in pertinent part: "(a) Except as otherwise provided in this section, no action shall be brought to recover damages from any person performing or furnishing the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to real property more than four years after the substantial completion of such improvement for any of the following:

"(1) Any patent deficiency in the design, specifications, surveying, planning, supervision or observation of construction or construction of an improvement to, or survey of, real property;

"(2) Injury to property, real or personal, arising out of any such patent deficiency; or

". . . . . . . . . . . . . . . . . . . .

"(e) As used in this section, "patent deficiency" means a deficiency which is apparent by reasonable inspection."

Code of Civil Procedure section 337.15 provides in pertinent part: "(a) No action may be brought to recover damages from any person, or

the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following:

"(1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property.

"(2) Injury to property, real or personal, arising out of any such latent deficiency.

"(b) As used in this section, "latent deficiency" means a deficiency which is not apparent by reasonable inspection."

Which of these two limitation periods applies, then, is determined by whether the complained of defect is "patent" or "latent." Recourse to Webster's Third International Dictionary (3d ed. unabridged) allows us to define a patent defect as one which is "open," "evident," or "obvious." That same authority informs us that a latent defect is one which is "hidden," "dormant," or "potential." The word connotes that which is submerged and not clearly apparent or certainly present to any but a most searching examination, but whose significance and effect may later emerge or develop.

The critical distinction, then, between a defect which is latent and one which is patent is its susceptibility to detection; or in the language of the statutes, whether or not the defect is discoverable by a "reasonable" inspection. In this regard, we opine that what is "reasonable" is a matter to be determined from the totality of circumstances of the particular case. Further, the reasonableness of the inspection must vary with the nature of the thing to be inspected and the nature and gravity of the harm which is sought to be averted. Moreover, one factor to be considered in assessing the reasonableness of an inspection must necessarily be the knowledge possessed by the inspector. And while knowledge within the "common experience" of the "average consumer"[3] may legitimately establish a minimum

---

[3] The above-quoted phrases, upon which appellant relies in advancing its argument that the trial court erred to the extent that it based its finding of the defect's patency on the expertise of Graves, appear in *Mattingly* v. *Anthony Industries, Inc.* (1980) 109 Cal.App.3d 506, 511 [167 Cal.Rptr. 292]. There, an 18-month old infant suffered injury when he fell into an unfenced swimming pool at the apartment complex where his family resided. Suit was filed against the builder of the pool, which had been completed more than four years earlier. It was argued that absence of the fence was not a patent defect, since it would neither have been apparent to nor understood by the infant plaintiff. In rejecting this argument, the court held, inter alia, that "the test used to determine whether a deficiency is patent is not a subjective one, applied to each individual user; rather, it is an objective test based on the reasonable expectations of the average consumer." (*Mattingly* at p. 511.) We do not view our opinion here as being at variance with the *Mattingly* rationale.

standard below which an individual inspector will not be allowed to fall, where the inspector (as here) possesses perception, knowledge, intelligence, or judgment superior to the average consumer the law will demand of him conduct consistent with such knowledge, judgment, etc.

In the case at bench, however, we need neither grapple with the reasonableness of the inspection nor speculate as to the susceptibility of the defect to detection; for the trial court found not only that the claimed defects *should have* been apparent to appellants, but that those defects *were in fact* known to them. ▪ ▪ ▪ ▪ ▪ We believe this finding to be substantially supported by the same evidence, and the inferences properly drawn therefrom, set forth above as sustaining the finding of waiver by final payment.[4]

The judgment is affirmed.

Racanelli, P. J., and Holmdahl, J., concurred.

---

[4]Even were we to entertain *arguendo* the premise that Code of Civil Procedure section 337.15 provides the applicable limitation period, the finding of *actual knowledge* on the part of appellants precludes them from here demanding arbitration. The 10-year period set forth in Code of Civil Procedure section 337.15 is not absolute, but only sets the outer limit within which suit must be brought. "Section 337.15, read together with Code of Civil Procedure sections 337 . . . enacts . . . a two-step limitation: actions founded upon a latent defect in the development of real property must be filed within . . . four years of discovery, . . . but in any case within ten years of the date of substantial completion of the improvement." (*Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d· 624, 641 [147 Cal.Rptr. 486, 581 P.2d 197].)

Clearly, even if we were to assume the defect to be a "latent" one as a matter of law, suit must be brought under Code of Civil Procedure section 337.15 within four years following discovery of the defect. In this case, therefore, the finding of the trial court that the defects in question *were in fact known* to appellants (in 1974 upon final payment) precludes them from demanding arbitration in 1981, i.e., more than four years after discovery of the defect.