[No. H008209. Sixth Dist. Mar. 26, 1992.]

GORDON L. GEERTZ et al., Plaintiffs and Appellants, v.
ANDREW E. AUSONIO et al., Defendants and Respondents.

**COUNSEL**

Murphy, Thompson & Gunter and Ralph W. Thompson III for Plaintiffs and Appellants.

Harray, Hudson & Kingsley, Kay T. Kingsley, Harray & Pierce and Michael P. Masuda for Defendants and Respondents.

## Opinion

## CAPACCIOLI, J.—

### Statement of the Case

Plaintiffs Gordon and Joan Geertz filed an action against, among others, Ausonio Construction, Inc. (Ausonio) for personal injuries and property damage caused by an allegedly defective drainage system in a building Ausonio constructed in 1978. ▮▮▮ The Geertzes now appeal from a judgment entered after the trial court found the action barred by the four-year statute of limitations for patent defects. (Code Civ. Proc., § 337.1.)[1] They claim the court erred in finding as a matter of law that the inadequate drainage system was a patent defect. We agree and reverse the judgment.

### Standard of Review

▮ "Summary judgment is properly granted only when the evidence in support of the motion establishes that there is no triable issue of material fact and that the moving party is entitled to judgment as a matter of law. [Citations.] Since a motion for summary judgment raises only questions of law regarding the construction and effect of the supporting and opposing papers, the appellate court independently reviews all of the papers, including the evidence presented in connection with the motion. [Citation.] Doubts as to the propriety of summary judgment are resolved against granting the motion. [Citations.]." (*Fowler* v. *Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 37 [241 Cal.Rptr. 539].)

### The Undisputed Facts

Orval and Ann Mead contracted with Ausonio to construct a two-story building, with commercial spaces on the first floor and apartments and an

---

[1]Code of Civil Procedure section 337.1 provides, in relevant part, "(a) Except as otherwise provided in this section, no action shall be brought to recover damages from any person performing . . . construction of an improvement to real property more than four years after the substantial completion of such improvement for any of the following: [¶] (1) Any patent deficiency in . . . construction of an improvement to . . . real property."

We observe that this action was filed more than 10 years after Ausonio completed construction of the building. Under the circumstances, claims against Ausonio for property damage based on a construction defect are barred by the absolute 10-year statute of limitations in section 337.15, regardless of whether the defect was latent or patent. (See *Martinez* v. *Traubner* (1982) 32 Cal.3d 755, 758-761 [653 P.2d 1046].) However, this statute does not apply to claims for personal injuries. (*Ibid.*; *Grimmer* v. *Harbor Towers* (1982) 133 Cal.App.3d 88, 92-94 [183 Cal.Rptr. 634].)

Unless otherwise specified, all further statutory references are to the Code of Civil Procedure.

exterior deck on the second floor. The building was completed in December 1978.[2]

During the first year after completion, leaves clogged the deck's drains and rainwater collected on the deck and then flowed over a sill into the kitchen of an adjacent apartment. Such overflow caused damage to the kitchen floor and some floor joists, which the Meads had repaired. To prevent it from recurring, the Meads raised the height of the sill from the deck into the kitchen and specially instructed their daughter, Kimberly Evans, who managed the property and lived in the building, to clear leaves from the deck drains. Until 1989, the overflow problem did not recur.

In 1986, plaintiffs leased commercial space in the Meads' building directly below the apartment later occupied by Kimberly Evans. They operated an antique shop there.

Early in the morning of April 25, 1989, the Geertzes received a call advising them that the antique shop was flooded and water was coming through the ceiling from the kitchen floor in the apartment above. Plaintiffs went to their shop and saw that the ceiling sagged. Fearing it would fall and damage antiques and display cases, Gordon Geertz borrowed a ladder from the Evanses. While attempting to remove a light fixture from the ceiling, he fell and was injured.

After the incident, Gordon Geertz learned from Orval Mead that the deck had no secondary overflow drains, i.e., scuppers, to allow water to drain if the primary drains became clogged or were otherwise unable to eliminate all of the water collecting on the deck.

### General Principles re Patent and Latent Defects

Whether a construction defect is latent or patent depends on whether it is "apparent by reasonable inspection." (§§ 337.1, subd. (e); 337.15, subd. (b).) A patent defect " 'is one which can be discovered by such an inspection as would be made in the exercise of ordinary care and prudence. [Citations.] This is contrasted with a latent defect, one which is hidden and which would not be discovered by a reasonably careful inspection. [Citations.]' " (*Preston* v. *Goldman* (1986) 42 Cal.3d 108, 123 [720 P.2d 476], quoting *Wagner* v. *State of California* (1978) 86 Cal.App.3d 922, 927 [150 Cal.Rptr. 489].)

---

[2]Although both parties on appeal claim that during construction, Ausonio informed the Meads of a potential drainage/overflow problem with the deck and suggested they consult their architect about it, Orval Mead, who was a defendant below, disputed this fact. His declaration denies that he was so informed.

"Whether a defect is apparent by reasonable inspection is a question of fact." (*Winston Square Homeowner's Assn. v. Centex West, Inc.* (1989) 213 Cal.App.3d 282, 290 [261 Cal.Rptr. 605]; see *Anderson v. Brouwer* (1979) 99 Cal.App.3d 176, 181 [160 Cal.Rptr. 65].) What constitutes a *reasonable* inspection "is a matter to be determined from the totality of circumstances of the particular case[]" and "must vary with the nature of the thing to be inspected and the nature and gravity of the harm which is sought to be averted." (*Renown, Inc. v. Hensel Phelps Construction Co.* (1984) 154 Cal.App.3d 413, 420 [201 Cal.Rptr. 242].) Whether a reasonable inspection would render a defect apparent is determined in light of "the reasonable expectations of the average consumer." (*Mattingly v. Anthony Industries, Inc.* (1980) 109 Cal.App.3d 506, 511 [167 Cal.Rptr. 292]; *Preston v. Goldman, supra*, 42 Cal.3d 108, 123; but see *Renown, Inc. v. Hensel Phelps Construction Co., supra*, 154 Cal.App.3d 413.[3]

In this regard, we note that if a reasonable inspection would reveal only the *manifestation* of a defect but not its cause, i.e., the defect itself, then the defect is not necessarily patent. (See *Baker v. Walker & Walker, Inc.* (1982) 133 Cal.App.3d 746 [184 Cal.Rptr. 245]; *Winston Square Homeowner's Assn. v. Centex West, Inc., supra*, 213 Cal.App.3d 282; see also 8 Miller & Starr, Cal. Real Estate (2d ed. 1990) § 25:36, p. 348.)

For example, in *Baker v. Walker & Walker, Inc., supra*, 133 Cal.App.3d 746, the temperature in a building fluctuated between 53 and 88 degrees.

---

[3] In *Renown, Inc. v. Hensel Phelps Construction Co., supra*, 154 Cal.App.3d 413, the court in dicta opined that "one factor to be considered in assessing the reasonableness of an inspection must necessarily be the knowledge possessed by the inspector. And while knowledge within the 'common experience' of the 'average consumer' [fn. omitted] may legitimately establish a minimum standard below which an individual inspector will not be allowed to fall, where the inspector (as here) possesses perception, knowledge, intelligence, or judgment superior to the average consumer the law will demand of him conduct consistent with such knowledge, judgment, etc." (*Id.* at pp. 420-421.)

The soundness of this dicta is questionable in light of *Preston v. Goldman, supra*, 42 Cal.3d 108, 123, which quotes with implicit approval the analysis set forth in *Mattingly v. Anthony Industries, Inc., supra*, 109 Cal.App.3d 506, 511: " 'The test used to determine whether a deficiency is patent is not a subjective one, applied to each individual user; rather, it is an objective test based on the reasonable expectations of the average consumer.' "

The *Renown* court's approach complicates what should be an objective evaluation of the inherent nature of a defect by interjecting issues as to the personal mental state of a particular owner of the defective premises.

This is not to say that a particular plaintiff's subjective knowledge concerning a defect is irrelevant. On the contrary, one's actual discovery of a latent defect may trigger a shorter limitations period than the 10-year absolute maximum. (See, e.g., *Regents of University of California v. Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 641 [581 P.2d 197] [actual knowledge of latent defect triggers four-year limitations period for breach of contract].)

In this case, there is no evidence the Meads possessed knowledge or expertise superior to the "average consumer." Therefore, we apply the test as stated by the court in *Preston*.

There was no dispute that in general the heating/cooling system was defective. However, since no one, including the manufacturer, general contractor, or subcontractor, could pinpoint or correct problem, the court concluded that the defect was latent, i.e., not discoverable upon a reasonable inspection. (*Id.* at p. 762.)

On the other hand, in *Winston Square Homeowner's Assn.* v. *Centex West, Inc., supra*, 213 Cal.App.3d 282, water would not drain from landscaped areas of a housing development. The homeowner's association claimed the defect was latent, arguing that although the manifestation of the defect (standing water/inadequate drainage) was reasonably apparent, the defective cause was not. The court disagreed, noting that numerous homeowners and the property management company were aware of the ponding problem and that "[s]everal witnesses testified the cause of the problem was obvious—the contours of the land and the slant of the pavement did not allow proper drainage." (*Id.* at p. 291.)

*Discussion*

In this case, the alleged construction defect is the lack of an overflow drainage system, that is, the lack of scuppers.

■ The Geertzes contend that the four-year limitations period for patent defects in section 337.1 should not apply to them regardless of whether the lack of scuppers was a patent defect. They point to undisputed evidence that they did not have access to the deck and therefore could not have inspected it. They urge us to create an exception for injured plaintiffs who neither knew about nor could have discovered the alleged defect during the limitations period. We decline the request.

■ Section 337.1 is an "economic regulation" designed to protect contractors. (*Salinero* v. *Pon* (1981) 124 Cal.App.3d 120, 128 [177 Cal.Rptr. 204].) "A contractor is in the business of constructing improvements and must devote his capital to that end; the need to provide reserves against an uncertain liability extending indefinitely into the future could seriously impinge upon the conduct of his enterprise." (*Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 633, fn. 2 [581 P.2d 197].) The statute promotes the construction of improvements, "since it frees those associated with it from the specter of lawsuits in the distant future. Those who fear venturing into such activities will be less deterred when a ceiling is placed on the period for which they can be held liable. The concept of promoting construction tends to harmonize with the public policy favoring the full enjoyment and use of real property." (*Wagner*

v. *State of California* (1978) 86 Cal.App.3d 922, 929-930 [150 Cal.Rptr. 489].)

Turning to the language of section 337.1, we note that it is clear and unambiguous: "Except as otherwise provided in this section, no action shall be brought to recover damages . . . ." (See fn. 1, *ante*, p. 1366.)
The statute explicitly incorporates the familiar rule of construction, *expressio unius est exclusio alterius*: where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed. (*In re Michael G.* (1988) 44 Cal.3d 283, 291 [747 P.2d 1152].)
We presume the Legislature included all the exceptions it intended to create. (*Rothschild* v. *Superior Court* (1930) 109 Cal.App. 345, 347 [293 P. 106].) Since the statute does not expressly exempt actions by those who lacked an opportunity to inspect for and find patent defects during the limitations period, we may not properly engraft such an exception to the statute under the guise of judicial construction. (*Reynolds* v. *Reynolds* (1960) 54 Cal.2d 669, 681 [7 Cal.Rptr. 737 [355 P.2d 481]; see § 1858.) This is especially so since doing so would not only usurp the legislative function but reduce the breadth of immunity now provided (i.e., "*no action* shall be brought etc.") by allowing actions against contractors, where the injured plaintiff's first encounter with a building having a patent defect occurs more than four years after construction of the building is completed. As such, the proposed exception is inconsistent with the legislative intent behind the statute.

The use of an *objective* test for a patent defect effectuates the broad protection afforded contractors by the statute by eliminating the possibility that a defect could be deemed patent as to some plaintiffs and latent as to others depending on the circumstances of each person injured as a result of the defect. As noted above, the test focuses on the nature of the defect, the circumstances surrounding it, and the nature and gravity of the harm it presents. The question to be answered is whether the average consumer, during the course of a reasonable inspection, would discover the defect. The test assumes that an inspection takes place. Thus, the relevant inquiry does not encompass the factual issues as to whether the average consumer in a particular plaintiff's position would have had an opportunity to conduct an inspection.

Finally, we observe that the essence of Geertzes argument is this: it is reasonable to immunize contractors from suits by those who can inspect the premises for patent defects within four years of construction but fail to take action against contractors for such defects within that time; however, it is unreasonable to afford such immunity from suits by those who are injured by a patent defect but could not have filed suit within the limitations period

because doing so, in effect, prevents such plaintiffs from ever recovering directly from the party most responsible for the defect and the injuries it has caused. Simply put, the Geertzes complain that the statute arbitrarily provides contractors with more immunity than is reasonable.

Section 337.1 has withstood analogous constitutional attacks on grounds that it arbitrarily confers a special privilege on a special class (*Salinero* v. *Pon*, *supra*, 124 Cal.App.3d 120, 128-129) and discriminates between real and personal property owners (*Wagner* v. *State of California*, *supra*, 86 Cal.App.3d 922, 929-930).

Here, the Geertzes do not claim that the statute has a *constitutional* infirmity, and we doubt such a claim would have merit. Consequently, given the clarity of the statute and its purpose, we believe their argument for a new exception to section 337.1 is one more properly addressed to the Legislature than the courts.

The question remains, does the evidence presented below establish as a matter of law that the lack of a secondary drainage system was a patent defect.

The evidence before us does not prove that in the abstract, average consumers (or the Meads) know an exterior deck should have some sort of secondary drainage system to handle overflow if the primary system becomes clogged.

Ausonio did present evidence that the Meads experienced flooding from the deck. Flooding, however, is not the alleged construction defect but at most a manifestation of it. Moreover, the evidence does not establish that to the average consumer, flooding as experienced by the Meads renders the alleged construction defect patently obvious. Indeed, Meads themselves did not think the overflow was caused by a defect in the deck. Rather, they viewed the flooding as a maintenance problem to be solved by keeping the existing drains free of leaves and raising the level of the sill between the kitchen and the deck. The record also indicates that when the drains were kept clear, flooding did not occur.

Under the circumstances, reasonable minds could differ concerning whether the flooding as experienced by the Meads renders the *cause*, i.e., the alleged defect in the deck, reasonably apparent to the average consumer.

Neither *Preston* v. *Goldman*, *supra*, 42 Cal.3d 108 nor *Winston Square Homeowner's Assn.* v. *Centex West, Inc.*, *supra*, 213 Cal.App.3d 282 persuade

us otherwise. In both cases, the courts found, or there was evidence, that the cause of the defect was obvious. Had Ausonio built a deck without any drains, then perhaps such a defect could be deemed patent. However, in the absence of knowledge that a deck should have a secondary overflow system, flooding caused by leaves clogging the main drains of the deck does not as a matter of law make the lack of such a system an obvious or patent defect.

Under the circumstances, since the question of whether the lack of an overflow drainage system is a patent defect involved a triable issue of fact, the trial court erred in granting summary judgment.

The judgment is reversed. The Geertzes are entitled to their costs on appeal. (Cal. Rules of Court, rule 26(a).)

Cottle, Acting P. J., and Premo, J., concurred.