[No. D015569. Fourth Dist., Div. One. July 12, 1993.]

NORTH COAST BUSINESS PARK, Plaintiff and Appellant, v. NIELSEN CONSTRUCTION COMPANY et al., Defendants and Respondents.

**COUNSEL**

Maurile C. Tremblay and Ted Allan Connor for Plaintiff and Appellant.

Di Caro, Highman, D'Antony, Dillard, Fuller & Gregor, Roger O'Scouton, Pamela G. Lacey, Gibbs, Eppsteiner & Stagg, Jane A. Hopper, Jensen & Roth, James M. Roth, Murtaugh, Miller, Meyer & Nelson, Michael J. Nelson, Russell A. Lehman, Carrick & Dale, George D. Dale, Donald J. Aberbook, Shifflet, Walters, Kane & Konoske and Barry M. Vrevich for Defendants and Respondents.

## OPINION

**FROEHLICH, J.**—North Coast Business Park (North Coast) appeals from the judgment entered after the trial court granted the motion for summary judgment filed by Erreca, Inc. (Erreca). Erreca's motion was based on the statute of limitations. The trial court concluded (1) there was no triable issue of fact as to when North Coast first had notice of the defective condition; and (2) the statute of limitations applicable to North Coast's claim had expired.

On appeal, North Coast claims there was a triable issue of fact because the defect of which it had notice was different from the defect which caused the damage. We conclude this argument was not properly raised below and thus affirm.

### 1. *Facts*

The relevant facts are undisputed. In 1981, North Coast's predecessor contracted with Nielsen Construction Company (Nielsen) for the construction of a business park using "tilt up" construction. The project was substantially completed by late 1982.

Part of the construction was a retaining wall (the crib wall) adjacent to building 9 in the business park. Erreca was the grading contractor on the job.

In January 1984, North Coast hired a registered civil engineer to inspect a crack in the floor slab in building 9. The engineer inspected the crack as well as the crib wall. He stated it was apparent that roof drainage from building 9 had discharged onto the existing fill soil at the top of the crib wall, that provision for adequate soil drainage had not been completed, and that runoff from the roof contributed to the erosion damage of the crib wall cells. He further opined the slab crack resulted from shrinkage and minor lateral movements which were not ongoing, but he addressed the drainage problems between building 9 and the crib wall, recommending North Coast contact the

crib wall designer to evaluate its stability and to replace the eroded crib wall backfill.

In December 1988, North Coast filed its complaint against Nielsen for breach of contract, breach of warranty, and negligence, alleging problems with the flooring in some of the buildings. North Coast's second amended complaint, alleging the same causes of action against Nielsen and numerous other defendants, claimed a defect existed in the design and construction of the crib wall. Erreca was joined as a cross-defendant by Nielsen.

### 2. *The Summary Judgment Motion*

Erreca moved for summary judgment, arguing that the defect in the design and construction of the crib wall was known to North Coast in early 1984, and therefore the three-year statute of limitations barred the action insofar as it was based on the crib wall defect. Erreca filed its statement of undisputed material facts, listing as undisputed facts: (1) the 1984 inspection occurred; (2) its purpose was to investigate the crack in the floor slab in building 9; (3) the inspection of the crib wall showed it had sustained major erosion damage; (4) the crib wall inspection showed improper drainage contributed to the erosion; and (5) North Coast was aware that the crack was caused by this defect.

North Coast's opposition to the motion had two aspects. The first and main argument was that, as a legal matter, the defects causing damage in building 9 were latent defects, and hence the applicable statute of limitations was the 10-year statute under Code of Civil Procedure[1] section 337.15, not the 3-year statute under section 338. The second aspect, which consumed one paragraph of a thirteen-page opposition, argued there were other defects in the project apart from the crib wall problem, and that summary judgment on those aspects would be improper. Indeed, North Coast's separate statement of disputed material facts (the separate statement) identified only two disputed facts, both of which claimed summary judgment was improper because there were defects apart from the crib wall problem.[2]

The trial court granted the motion for summary judgment, concluding the engineer's report gave notice of soils-related defects, triggering both the

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]North Coast listed the following disputed facts: "1. There are numerous other construction defects attributable to soils conditions [of] which [North Coast] complains in this lawsuit, in addition to those concerning Buildings 8 and 9, and they include, but are not limited to, regrading of landscape areas and adding additional area drains. [¶] 2. There are numerous other construction defects attributable to numerous other conditions [of] which [North Coast] complains in this lawsuit, and they includ[e], but are not limited to, the roof drain leader problems, the deterioration of the pipe railing around the crib wall, the inadequate

three- and four-year statutes of limitations. Accordingly, judgment was entered barring any claims insofar as they alleged defects in the crib wall or soils conditions underneath and adjacent to buildings 8 and 9. This appeal followed.

### 3. The Trial Court Correctly Ruled That the Discovery—Based Statute of Limitations Applied to Bar the Drainage Defect

■ We first address the issue which consumed the parties and court below: Which statute of limitations applies? North Coast argues that when the claim is based on a defect originally latent in nature, the lawsuit is timely so long as it is filed within the 10-year statute of limitations under section 337.15, even though the lawsuit is filed more than 3 years after the defect becomes manifest and is discovered. We disagree.

In *Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624 [147 Cal.Rptr. 486, 581 P.2d 197] and *Liptak* v. *Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762 [167 Cal.Rptr. 440], the courts explained the interplay between section 337.15 and sections 337 and 338. When a defect is latent (i.e., not apparent from a reasonable inspection (see *Geertz* v. *Ausonio* (1992) 4 Cal.App.4th 1363, 1368 [6 Cal.Rptr.2d 318]), sections 337 and 338 begin to run only after the damage is sufficiently appreciable to give a reasonable man notice that he has a duty to pursue his remedies. (*Liptak, supra,* 109 Cal.App.3d 762 at p. 769.) However, section 337.15 imposes an absolute 10-year bar, based on the date of "substantial completion," regardless of discovery. (*Regents of University of California, supra,* 21 Cal.3d at pp. 640-641.) The interplay between these statutes sets up a two-step process: (1) actions for a latent defect must be filed within three years (§ 338) or four years (§ 337) of discovery, but (2) in any event must be filed within ten years (§ 337.15) of substantial completion. (*Ibid.*)

The trial court correctly ruled that the three- and four-year statutes applied based on the 1984 discovery of the drainage problem. There was no triable issue of fact because North Coast's expert advised it of the damage and the source thereof (i.e., improper drainage causing major erosion of the fill in the crib wall), and further advised North Coast to contact the crib wall's designer to evaluate the crib wall's stability and to replace the eroded backfill. Summary judgment based on the statute of limitations is appropriate. (See *Love* v. *Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1143 [271

construction of the exterior stairs, walkways and decks as well as the distress and deterioration in the stairs, walkways and decks, various roof leaks and drainage problems of water on top of the roofs, cracking in the second story light weight concrete floors, and inadequate ventilation in numerous areas."

Cal.Rptr. 246] [where plaintiff notes damage, hires expert to inspect, and expert describes cause of damage, cause of action accrues].)

### 4. North Coast Cannot Identify a New Defect As the Basis for the Claim for the First Time on Appeal

The primary argument raised by North Coast on appeal is that, even assuming it discovered the drainage defect in 1984, it was not aware of a different alleged "defect," i.e., that the footing of the crib wall was defectively designed or constructed.[3] Since notice of one defect is not necessarily notice of distinct defects (*Chu* v. *Canadian Indemnity Co.* (1990) 224 Cal.App.3d 86, 97-98 [274 Cal.Rptr. 20]), North Coast urges its claim did not arise until discovery of the footing problem, and the date of that discovery raises at least a triable issue of fact as to whether the statute of limitations has run.

The difficulty with North Coast's claim is that this issue was never raised below. No mention of "defective footings" was made in North Coast's points and authorities filed in opposition to the summary judgment motion; North Coast's separate statement contained no hint that the date of discovery of this "defect" was a disputed fact material to the statute of limitations issue; North Coast's oral argument was silent on this issue; and, it appears, there was no motion for reconsideration or request for relief under section 473 to bring this issue to the trial court's attention. We conclude the failure to raise or argue this "defect" below bars North Coast from obtaining reversal thereon, both under general principles of "waiver" and "theory of the trial," and under the more particularized statutory provisions applicable to summary judgment motions.

### A. Waiver and Theory of the Trial

Under general principles of "waiver" and "theory of the trial," the "footing" argument was waived. Ordinarily the failure to preserve a point below constitutes a waiver of the point. (*Menefee* v. *County of Fresno* (1985) 163 Cal.App.3d 1175, 1182 [210 Cal.Rptr. 99].) This rule is rooted in the fundamental nature of our adversarial system: The parties must call the court's attention to issues they deem relevant. " 'In the hurry of the trial many things may be, and are, overlooked which could readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to

---

[3]Specifically, an engineering report suggested the footing was grounded on fill and alluvium, creating a higher load on its toe than on its heel and causing the wall to tilt forward.

any infringement of them.' " (*Sommer* v. *Martin* (1921) 55 Cal.App. 603, 610 [204 P. 33].) ██ Here, Erreca argued the statute of limitations had run because the defect was the drainage. The duty of North Coast was to direct the court's attention to any different factual basis of liability on which North Coast might rely. North Coast failed to do this, and waiver is appropriate.

██ The same policy underlies the principles of "theory of the trial." "A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing party." (*Ernst* v. *Searle* (1933) 218 Cal. 233, 240-241 [22 P.2d 715].) The principles of "theory of the trial" apply to motions (see *Planned Protective Services, Inc.* v. *Gorton* (1988) 200 Cal.App.3d 1, 12-13 [245 Cal.Rptr. 790]), including summary judgment motions. (See *Webster* v. *Southern Cal. First Nat. Bank* (1977) 68 Cal.App.3d 407, 416-417 [137 Cal.Rptr. 293].) ██ Here the summary judgment motion focused on the drainage problem as the relevant defect. The matter was resolved on that theory, with North Coast claiming that despite its knowledge of the drainage problem it was still entitled to recover because the drainage defect fell under the 10-year statute of limitations. It would be manifestly unjust to the opposing parties, unfair to the trial court, and contrary to judicial economy to permit a change of theory on appeal.

North Coast's supplemental brief raises several reasons why waiver and theory of the trial ought not to be applied here, none of which is persuasive. For example, North Coast argues waiver is inapplicable because North Coast failed only to argue an "inference," and that it was the trial court's sua sponte obligation to "draw" that inference on behalf of North Coast.[4] Beyond North Coast's failure to argue an inference, it failed to bring the relevant fact of the placement of the footing to the court's attention; it failed to explain the factual significance of that fact; and it failed to explain how that fact precluded summary judgment.

North Coast also argues theory of the trial is inapplicable because that doctrine only prohibits "diametrically opposed" theories. It further argues its

---

[4]North Coast cites three cases for the proposition that summary judgment is reversible on appeal if the trial court fails sua sponte to draw an inference raising the triable issue. Those cases are inapposite because North Coast not only failed to argue an inference, but also failed to highlight or identify the fact of the defective footing, upon which the alleged inference could be drawn. Hence *Maxwell* v. *Colburn* (1980) 105 Cal.App.3d 180, 184-185 [163 Cal.Rptr. 912] is irrelevant because the facts on which the inference rested were before the *Maxwell* court. To the extent either *Schaefer* v. *Manufacturers Bank* (1980) 104 Cal.App.3d 70 [163 Cal.Rptr. 402] or *Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630 [177 Cal.Rptr. 445] implies the trial court must search out those facts on its own, and then sua sponte draw the desired inference, we note both cases were decided before the effective date of the statute imposing the obligation to file a separate statement, and therefore any such holding would lack vitality under the new statutory scheme.

theory that its claim was not time-barred has remained consistent. We conclude North Coast's theories are inconsistent. At trial, North Coast assumed the defect sued upon was improper drainage, of which it had notice, but argued its complaint was timely filed because the 10-year statute of limitations applied. North Coast's appellate argument now assumes the applicable statute is the three-year statute, and argues the defect sued upon is the footing of which it had no notice. North Coast's attempt to reconcile these theories is unavailing.

### B. *Failure to Raise Factual Basis in Separate Statement*

An analogous basis for deeming the issue waived is the failure by North Coast to mention the footing problem in its Separate Statement. The general rule is that "this court will consider only the facts before the trial court at the time it ruled on the motion" for summary judgment. (*Jacobs* v. *Retail Clerks Union, Local 1222* (1975) 49 Cal.App.3d 959, 966 [123 Cal.Rptr. 309].) On appeal, North Coast seeks to avoid this rule by urging that the fact of the "defective footing" was "before the trial court" because it was mentioned in an exhibit North Coast lodged in opposition to the summary judgment motion. North Coast argues the issue is preserved and raised so long as the factual underpinning for the claim can be found somewhere in some document filed or lodged below.[5]

We construe the statutory mandate for a separate statement as requiring a party to *specify within that document* any facts he deems to be disputed facts material to the issue presented. The court in *United Community Church* v. *Garcin* (1991) 231 Cal.App.3d 327 [282 Cal.Rptr. 368], extensively analyzing the role played by the separate statement, observed that the statement serves two functions: to give the opponent notice of the facts; and to permit the trial court to focus on the facts germane to the issues. (*Id.* at p. 335.) Importantly, *United Community Church* observed that "it is no answer to say the facts set out in the supporting evidence or memoranda of points and authorities are sufficient. 'Such an argument does not aid the trial court at all since it then has to cull through often discursive argument to determine what is admitted, what is contested, and where the evidence on each side of the issue is located.'" (*Id.* at p. 335, quoting *Blackman* v. *Burrows* (1987) 193 Cal.App.3d 889, 894 [238 Cal.Rptr. 642].) The *United Community Church* court quoted Judge Zebrowski's observation that "*all* material facts must be

---

[5]North Coast cites *Newport* v. *City of Los Angeles* (1960) 184 Cal.App.2d 229 [7 Cal.Rptr. 497] for the proposition that triable issues can be raised either by affidavits or by "documents in the file which [the affidavit] incorporates." (*Id.* at p. 234.) However, *Newport* was decided before the statutory change mandating a separate statement took effect.

set forth in the separate statement. 'This is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, *it does not exist.*' " (231 Cal.App.3d at p. 337, italics in original.) Thus, when the "fact" is not mentioned in the separate statement, it is irrelevant that such fact might be buried in the mound of paperwork filed with the court, because the statutory purposes are not furthered by unhighlighted facts.

The required separate statement is "not to satisfy some sadistic urge to torment lawyers" (*United Community Church* v. *Garcin, supra,* 231 Cal.App.3d at p. 335), but serves an additional function: to aid the trial court in discharging its statutory duties. Our already overburdened trial courts are obliged to explain the reasons for rulings with specific reference to the evidence which indicates the existence or nonexistence of a triable issue of fact. (§ 437c, subd. (g).) As recognized in *Young* v. *Superior Court* (1986) 179 Cal.App.3d 28 [224 Cal.Rptr. 405], "[t]he burdens imposed upon the trial court . . . will be eased considerably if the court insists, as it should, on strict compliance with [the required separate statement]," because the court's ability to focus on and articulate the evidentiary basis for its ruling will be found in the separate statement. (*Id.* at pp. 31-32.)

In the proceedings below, North Coast raised neither the fact of a different defect nor the theory that such defect was the basis for its claim. That the fact *could have been found* in the filed documents is of no value, because this would have imposed on the trial court the impossible burden of determining both the existence and significance of facts unmentioned by the parties.[6] We will not place on the trial court the burden of conducting a search for facts which counsel failed to bring out, nor can we attribute a level of prescience to the trial court which counsel lacked. Instead, we adhere to the familiar rule that *"possible theories not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal."* (*Johanson Transportation Service* v. *Rich Pik'd Rite, Inc.* (1985) 164 Cal.App.3d 583, 588 [210 Cal.Rptr. 433], italics added.)

North Coast's supplemental brief urges that its failure to comply with the required separate statement is irrelevant because it was respondent's burden

[6]This case exemplifies the wisdom of enforcing compliance with the separate statement. This is not a case where the issues are simple and the evidence is limited to a few pages. (See *Gilbertson* v. *Osman* (1986) 185 Cal.App.3d 308, 315 [229 Cal.Rptr. 627].) Instead, this is a construction defect case in which the issues are many and complex. Moreover, the reference to the footing problem is buried in the middle of a one-inch-thick set of documents filed as an exhibit to North Coast's opposition below, and the reference is contained in just one paragraph of a complex engineering report. This is a prime example of the type of case in which the court can and must rely on the parties to fulfill their roles.

to show summary judgment was appropriate. North Coast contends respondent failed to meet that burden because a declaration filed by respondent contained a single passage referring to North Coast's expert's belief that "compressible material that is present at the base of the crib wall is responsible for building nine's crack . . . ." This passage, North Coast argues, prevented summary judgment. We disagree. North Coast's argument rests on the notion that the trial court had a sua sponte duty (1) to locate the above oblique passage in a mound of paperwork; (2) to interpret it (i.e., to know that "the base" referred to the soil beneath the footing); (3) to understand the engineering significance of the statement (i.e., to divine that placement of a footing on compressible material can be, and here was, an improper construction technique); and (4) to somehow ascertain that this fact was learned less than three years before the lawsuit was filed. The trial court was also presumably required sua sponte to prophesy that North Coast would select this "defect" as the one upon which its lawsuit was based.

We cannot interpret section 437c as permitting a party to ignore its obligation to highlight material facts in the required separate statement, or as allowing for reversal when the trial court does not uncover the facts.

### C. *Conclusion*

Under waiver, theory of the trial, and summary judgment principles, the "footing" issue must be deemed waived.

### DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and Nares, J., concurred.