[No. C058300. Third Dist. Sept. 1, 2009.]

CREEKRIDGE TOWNHOME OWNERS ASSOCIATION, INC., Plaintiff
and Appellant, v.
C. SCOTT WHITTEN, INC., Defendant and Respondent.

[No. C059458. Third Dist. Sept. 1, 2009.]

CREEKRIDGE TOWNHOME OWNERS ASSOCIATION, INC., Plaintiff
and Appellant, v.
REO ROOFING COMPANY et al., Defendants and Respondents.

## Counsel

Angius & Terry, Paul P. Terry, Jr., Bradley J. Epstein and Sam Y. Chon for Plaintiff and Appellant.

Klinedinst, G. Dale Britton, Natalie P. Vance and Jason W. Schaff for Defendant and Respondent C. Scott Whitten.

Law Offices of Robles & Castles, William A. Robles and Ranjani Ramakrishna for Defendant and Respondent Monier Inc.

Anwyl, Scoffield & Stepp, Lindy H. Scoffield and Pamela A. Lewis for Defendant and Respondent REO Roofing Company.

## Opinion

**BUTZ, J.**—This is a construction defect case involving the reroofing of 11 buildings that house 61 units in a townhome community. The trial court granted summary judgment to the roofing defendants. The trial court found that the plaintiff townhome association did not meet the statute of limitations because the association had notice of a water moisture problem inside the window of one unit as a result of the new roof, and this unit reported several broken roof tiles.

 We shall reverse. We conclude there are triable issues of material fact on the two statute of limitations issues: (1) whether the alleged defect was patent (i.e., apparent to an average consumer from a reasonable inspection);

and (2) whether the defect can be deemed discovered in the latent defect context because the damage was sufficiently appreciable so that plaintiff suspected or reasonably should have suspected that defendants had done something wrong to plaintiff.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 18, 2004, plaintiff Creekridge Townhome Owners Association, Inc. (plaintiff), filed a construction defect lawsuit, concerning a reroofing project, against defendants C. Scott Whitten, Inc. (Whitten), REO Roofing Company (REO), and Monier Inc. (Monier). Whitten was the roofing manager and inspector, REO was the roofer, and Monier was the roofing supplier.

The lawsuit involves the reroofing of 11 buildings, comprising 61 units, in plaintiff's townhome community. The reroofing was completed in early 1997, and replaced the buildings' old shake roofs with Cedarlite concrete tile roofs.[1]

In late June 1997, one owner in plaintiff's community described in a letter to plaintiff's board that she had a water moisture problem inside her second-story bedroom window as a result of the new tile roof; she also reported several broken roof tiles. The summary judgment record contains no other evidence of any other roof problems until 2003.

In the winter of 2003, plaintiff suffered numerous roof leaks. The following spring, plaintiff hired a roofing consultant, Randy Davis, who found multiple causes for the leaks and multiple types of roof defects.

As noted, on June 18, 2004, plaintiff sued Whitten, REO and Monier for these alleged roof defects. Plaintiff set forth causes of action for breach of warranty (express and implied), breach of contract, and negligence.

Whitten moved for summary judgment on statute of limitations grounds. After tentatively denying this motion, the trial court reversed course and

---

[1] A different roofer reroofed the remaining six buildings in plaintiff's townhome community, and is not a party to this appeal. Also, there was another roofer besides REO who worked on some of the 11 buildings at issue here; that roofer went bankrupt and is not part of this appeal.

granted it, citing an opinion decided during the summary judgment proceedings, *Landale-Cameron Court, Inc. v. Ahonen* (2007) 155 Cal.App.4th 1401 [66 Cal.Rptr.3d 776] (*Landale*).

REO and Monier in turn obtained a stipulated judgment in their favor on the same grounds as the Whitten summary judgment.[2] This stipulated judgment resulted in a second appeal by plaintiff, C059458, which we have consolidated with the Whitten appeal, C058300.

## DISCUSSION

We uphold a summary judgment if all the evidentiary papers associated with it—which we review independently—show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We do not resolve factual issues but ascertain whether there are any to resolve. (Code Civ. Proc., § 437c, subd. (c);[3] *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1305 [130 Cal.Rptr.2d 347] (*Colores*); *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 475 [4 Cal.Rptr.2d 522].)

Because a summary judgment denies the losing party its day in court, we liberally construe the evidence in support of that party and resolve doubts concerning the evidence in that party's favor. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517]; *Colores, supra,* 105 Cal.App.4th at p. 1305.)

Whitten based its summary judgment motion entirely on two interrogatory answers that plaintiff furnished, as read in light of the gravamen of plaintiff's complaint.

The two interrogatories, propounded by Monier to plaintiff, were:

"No. 14: Identify the date when you first became aware that the Cedarlite tile roof was leaking.

---

[2] Plaintiff also sued defendant Monier for strict liability. There is hardly any mention of this cause of action in the briefs. Nevertheless, *judgment* was granted in favor of Monier based on the statute of limitations grounds on which defendant Whitten obtained summary judgment. We are reversing the summary judgment in favor of Whitten and, consequently, the stipulated judgment in favor of Monier and REO. To the extent the strict liability cause of action against Monier was summarily foreclosed on these statute of limitations grounds, it has been revived with this reversal as well.

[3] Undesignated statutory references are to the Code of Civil Procedure.

"No. 15: Referencing your previous response, how did you become aware that the Cedarlite tile roof was leaking[?]"

Plaintiff provided the same answer to both interrogatories:

"Homeowner Heidi Goodman of 7434 Creekridge Lane wrote a letter to the Board that was discussed in open session at the 6/24/97 board meeting minutes describing a water moisture problem inside her second[-]story bedroom window as a result of the tile roofs, in addition to reporting several broken roof tiles."

The gravamen of plaintiff's complaint alleges that the reroofing "deficiencies include, among other things, the following: [¶] a. Water infiltration through roofs and roof materials, and within roof systems."

With this background in mind, we now turn to the two statute of limitations issues of patent defect and latent defect/discovery.

## I. Patent Construction Defect

■ Section 337.1 sets forth a statute of limitations of four years for a "patent" construction defect, which starts running when the construction is substantially completed. (§ 337.1, subd. (a)(1).)

■ The test to determine whether a construction defect is patent is an objective test that asks "whether the average consumer, during the course of a reasonable inspection, would discover the defect. The test assumes that an inspection takes place." (*Geertz v. Ausonio* (1992) 4 Cal.App.4th 1363, 1370 [6 Cal.Rptr.2d 318]; see § 337.1, subd. (e); 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 606, pp. 787–788.) This test generally presents a question of fact, unless the defect is obvious in the context of common experience; then a determination of patent defect may be made as a matter of law (including on summary judgment). (*Preston v. Goldman* (1986) 42 Cal.3d 108, 110–111, 123 [227 Cal.Rptr. 817, 720 P.2d 476] (*Preston*); *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 644 [134 Cal.Rptr.2d 273] (*Mills*); *Tomko Woll Group Architects, Inc. v. Superior Court* (1996) 46 Cal.App.4th 1326, 1339 [54 Cal.Rptr.2d 300] (*Tomko*); *Geertz, supra,* 4 Cal.App.4th at p. 1368.)

Here, the only evidence of defect presented by defendant Whitten in its summary judgment motion regarding the 1997 reroof construction was an interrogatory answer that referenced a letter a homeowner in plaintiff's community had written to plaintiff's board. According to the interrogatory answer, this letter "was discussed in open session at the 6/24/97 board

meeting . . . [and] describ[ed] a water moisture problem inside [the home-owner's] second[-]story bedroom window as a result of the tile roofs, in addition to reporting several broken roof tiles."

Plaintiff countered this evidence with a declaration from the roofing consultant whom plaintiff had hired after incurring many roof leaks in 2003. The consultant found multiple defects regarding the 1997 reroofing, and stated that these defects "would not be readily apparent to a lay person."

Based on this evidence, we cannot say that the reroofing defects alleged here were patent defects as a matter of law. Only one roof-related "water moisture problem" in one unit of a 61-unit, 11-building complex—and that problem was inside a window—coupled with a report of several broken roof tiles from that unit's owner, were presented. That is it. This evidence pales in comparison to situations involving obvious defects in the context of common experience, in which a patent defect has been found as a matter of law: for example, a backyard pond with only a one-foot-high wall around it, into which a toddler fell (*Preston, supra*, 42 Cal.3d at pp. 110–111, 121–123); and a visible defect in pedestrian pavement substantial enough to cause a pedestrian to trip and fall (*Tomko, supra*, 46 Cal.App.4th at p. 1339).

The four-year statute of limitations for a patent construction defect does not provide a basis on which to grant summary judgment here. That leads us to the statute of limitations concerning a latent construction defect and the discovery of such a defect.

## II. Latent Construction Defect/Discovery

A "latent" construction defect is one that is "not apparent by reason-able inspection." (§ 337.15, subd. (b).) As to a latent defect that is alleged in the context of the challenged causes of action here—negligence, breach of warranty, and breach of contract—three statutes of limitations are in play: sections 338, 337 and 337.15. "The interplay between these [three] statutes sets up a two-step process: (1) actions for a latent defect must be filed within three years (§ 338 [injury to real property]) or four years (§ 337 [breach of written contract]) of discovery, but (2) in any event must be filed within ten years (§ 337.15) of substantial completion." (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 27 [21 Cal.Rptr.2d 104] (*North Coast*); see *Regents of University of California v. Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 640–641 [147 Cal.Rptr. 486, 581 P.2d

197]; *Landale, supra,* 155 Cal.App.4th at p. 1407; *Mills, supra,* 108 Cal.App.4th at pp. 643–644.)[4]

██ As noted, the limitations periods of sections 337 and 338 start to run upon "discovery." Discovery occurs when the plaintiff suspects, or reasonably should suspect, that someone has done something wrong to the plaintiff, causing the injury (here, "wrong" is not used in a technical sense, but in a lay one). (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397–398 [87 Cal.Rptr.2d 453, 981 P.2d 79]; *Landale, supra,* 155 Cal.App.4th at p. 1407; *Mills, supra,* 108 Cal.App.4th at pp. 643–644.) "A plaintiff has reason to suspect when he has *notice or information of circumstances to put a reasonable person on inquiry.*" (*Landale, supra,* 155 Cal.App.4th at pp. 1407–1408; see *Norgart, supra,* 21 Cal.4th at p. 398.) In other words, "sections 337 and 338 begin to run only after the *damage is sufficiently appreciable to give a reasonable man notice* that he has a duty to pursue his remedies." (*North Coast, supra,* 17 Cal.App.4th at p. 27, italics added; see *Mills, supra,* 108 Cal.App.4th at p. 646.)

Again, though, we cannot say, as a matter of law, that "a water moisture problem" inside a window as a result of the tile roofs—in just one unit of a complex that comprises 61 units and 11 buildings—along with a report of several broken roof tiles by that unit's owner, constitutes sufficiently appreciable damage to give a reasonable person notice that remedies must be pursued.

It was the recent decision in *Landale* that prompted the trial court to change its mind and grant the summary judgment. We are not similarly persuaded.

*Landale* was a summary judgment construction defect case involving an eight-unit condominium complex that incurred various water leaks during rains. (*Landale, supra,* 155 Cal.App.4th at p. 1403.) The central issue was whether the three-year statute of limitations for injury to real property (§ 338) had been tolled. (*Landale,* at p. 1404.) To decide that issue, the court first had to decide whether the statute had run absent tolling. (*Id.* at pp. 1403–1404, 1407–1410.)

The *Landale* court concluded that the three-year statute of limitations had run on the complaint filed in January 2001 based on the following evidence:

---

[4] Because the motion for summary judgment was brought by defendant Whitten, who was the roofing manager and inspector, the motion focused on defects in construction rather than on defects in the roofing product itself. The decision in *Mills* notes that "[n]either section [referring to both § 337.1 (patent construction defect) and § 337.15 (latent construction defect)] applies to the manufacturer of a product incorporated into the improvement . . . ." (*Mills, supra,* 108 Cal.App.4th at p. 643; see fn. 2, *ante.*)

The former board president of the plaintiff homeowners association admitted in her deposition (1) that there were heavy rains in 1997, which caused rainwater to collect on the roofs and resulted in leaks where there had not been any leaks before, and that in 1997 a handyman applied some tar to the roof and other areas; and (2) that she received a letter in June 1998 that specifically mentioned leaks in her unit and at least two other units during the 1996–1997 rainy season, as well as a problem with waterproofing of the walls in another unit, roof and deck problems, and stairway leaks. (*Landale, supra,* 155 Cal.App.4th at pp. 1404–1405, 1408.)

Based on this evidence, *Landale* concluded: "Here, at some unspecified date in 1997, . . . the . . . president [of the board of the plaintiff homeowners association (HOA)] . . . noticed water intrusion and observed a handyman trying to repair roof leaks. The HOA thus had notice or information that should have prompted further inquiry 'through the exercise of reasonable diligence.' [Citation.] Indeed, the June 1998 letter . . . to [the HOA board president] indicated that during the 1997 heavy El Niño rains several other units had leaks, and there were also 'roof and deck problems' and 'stairway leaks.' Such other damage would no doubt have been revealed to the HOA with the exercise of reasonable diligence. [¶] Thus, in the present case, the [three-year, section 338] statute of limitations began to run at the latest by the end of 1997 . . . and the complaint filed on January 19, 2001, was therefore untimely—unless the statute of limitations was tolled . . . ." (*Landale, supra,* 155 Cal.App.4th at p. 1408.)

In *Landale,* then, by the end of 1997, there were leaks in at least three of the complex's eight units, including the unit of the board president of the plaintiff homeowners association. Furthermore, at this point, the president had observed a handyman trying to repair roof leaks, and there was a problem with waterproofing of the walls in another unit as well as roof and deck problems and stairway leaks. In short, at least half of the units in the *Landale* complex were leaking, and repair attempts had been observed by the homeowners association board president. This stands in stark contrast to the evidence presented here: One of 61 units had a window "water moisture problem" as a result of the tile roofs; the owner of that unit reported several broken concrete roof tiles; and no repairs had been observed.

Finally, the sharp distinction between the *Landale* facts and the facts here highlights a significant concern raised by plaintiff. If we were to find in favor of defendants, that would force property owner associations across the state to conduct extensive investigations for possible construction defects based on any report of a small problem. This could prove very expensive for the associations, and would often be futile. We decline to impose such a burden.

## DISPOSITION

The judgments (order granting summary judgment in favor of Whitten, No. C058300, and the subsequent stipulated judgment in favor of REO and Monier, No. C059458) are reversed. Plaintiff is awarded its costs on both appeals. (Cal. Rules of Court, rule 8.278(a)(1)–(3).)

Sims, Acting P. J., and Robie, J., concurred.