[No. D022943. Fourth Dist., Div. One. Apr. 17, 1997.]

FIELDSTONE COMPANY, Plaintiff and Appellant, v.
BRIGGS PLUMBING PRODUCTS, INC., et al., Defendants and
Respondents.

## COUNSEL

McDonald, Hecht & Solberg, Hecht, Solberg, Robinson & Goldberg, Lauri Croce Streeter and Thomas C. Nelson for Plaintiff and Appellant.

Nickoloff & Silverberg, Thomas O. Nickoloff, David K. Silverberg, Greco & Traficante, Scott A. Johnson, Douglas A. Murphy and Paul A. Traficante for Defendants and Respondents.

## OPINION

**HUFFMAN, Acting P. J.**—Briggs Plumbing Products, Inc., doing business as Briggs Industries; Verson Allsteel Press, the predecessor of Allied Products Corporation (together Allied); and CR/PL, Inc.,[1] manufactured inexpensive bathroom sinks, hundreds of which the Fieldstone Company installed in residential developments throughout San Diego County in the 1980's. Fieldstone, which brought this action to recoup costs of replacing sinks prematurely rusting and chipping, appeals from summary judgments in favor of the manufacturers. We affirm.

### I

### FACTUAL AND PROCEDURAL BACKGROUND

The manufacturers produced low-cost enameled steel bathroom sinks; they carried written one-year warranties. Pursuant to Fieldstone's specification, plumbing subcontractors installed the sinks in numerous Fieldstone residential developments. Instead of lasting twenty-five or more years as expected, unsightly rusting and porcelain chipping, or "popping," occurred within one to five years, due to spot welding and inadequate coating around steel overflow outlets.

In response to homeowner complaints, Fieldstone spent more than $250,000 replacing 1,900 of the enameled steel sinks with ones made of vitreous china. When the manufacturers refused to reimburse Fieldstone, it filed this suit for breach of express and implied warranties, strict liability, implied equitable indemnity and declaratory relief. The manufacturers brought motions for summary judgment, arguing the products liability claims were meritless because there was no requisite property damage. Rather, the sinks only damaged themselves, and thus damages were purely

---

[1] We refer to defendants collectively as manufacturers, and individually as Briggs, Allied and CR/PL where appropriate.

noncompensable economic ones. With regard to warranty issues, the manufacturers argued among other things that Fieldstone failed to give timely notice of breach of any express warranties created by their promotional materials, and lack of privity abrogated implied warranty claims. After oral argument, the trial court granted the motions. On appeal, Fieldstone contends the court erred as there are triable issues of material fact on all issues.

II

DISCUSSION

A. *Standard of Review*

Summary judgment is proper only where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "To secure summary judgment, a moving defendant may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citations]." (*Sanchez* v. *Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465 [55 Cal.Rptr.2d 415].) "All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. [Citation.]" (*Barber* v. *Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].) We review the record de novo to determine whether defendants met their burdens of proof. (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

B. *Strict Liability Claims*

Under California law, a manufacturer may be strictly liable for physical injuries caused to person or property, but not for purely economic losses. (*Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9, 18-19 [45 Cal.Rptr. 17, 403 P.2d 145] (*Seely*); *San Francisco Unified School Dist.* v. *W.R. Grace & Co.* (1995) 37 Cal.App.4th 1318, 1327-1329 [44 Cal.Rptr.2d 305]; *Sacramento Regional Transit Dist.* v. *Grumman Flxible* (1984) 158 Cal.App.3d 289, 298 [204 Cal.Rptr. 736].)[2] "[T]he line between physical injury to property and economic loss reflects the line of demarcation between tort

[2] The California Supreme Court first stated this rule in dicta in *Seely, supra,* 63 Cal.2d at page 18, and restated it in *Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 130 [104 Cal.Rptr. 433, 501 P.2d 1153]. The appellate courts have consistently followed the general rule as well in the negligence context. (See *San Francisco Unified School Dist.* v. *W.R. Grace & Co., supra,* 37 Cal.App.4th at pp. 1327-1329; *Sacramento Regional Transit Dist.* v. *Grumman Flxible, supra,* 158 Cal.App.3d at p. 298; *Rodrigues* v. *Campbell Industries* (1978) 87 Cal.App.3d 494, 498 [151 Cal.Rptr. 90]; *Anthony* v. *Kelsey-Hayes Co.* (1972) 25

theory and contract theory. [Citation.] ' "Economic" loss or harm has been defined as "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property . . . ." ' [Citations.]" (*Id.* at p. 294; see also *San Francisco Unified School Dist.* v. *W.R. Grace & Co., supra,* 37 Cal.App.4th at p. 1327, fn. 5.)[3]

Fieldstone argues the economic loss rule does not foreclose tort recovery here because the sink defects—spot welding and insufficient coating—caused injuries—rusting and chipping—to other, nondefective portions of the sinks, and thus the requisite damage to "other property" occurred. The essential facts are undisputed;[4] the issue of whether Fieldstone suffered "property damage" or merely "economic loss" related to the sinks presents a question of law. (*Sacramento Regional Transit Dist.* v. *Grumman Flxible, supra,* 158 Cal.App.3d at p. 294; *Transwestern Pipeline Co.* v. *Monsanto Co.* (1996) 46 Cal.App.4th 502, 524 [53 Cal.Rptr.2d 887].)

---

Cal.App.3d 442, 447 [102 Cal.Rptr. 113]; but see *Ales-Peratis Foods Internat., Inc.* v. *American Can Co.* (1985) 164 Cal.App.3d 277, 281-285 [209 Cal.Rptr. 917] [in which the court noted it was not bound to follow the *Seely* economic loss rule, because it was stated in dicta].)

[3]The preclusion of recovery for economic losses is based on a policy determination that a consumer should not bear the risk of physical injury when purchasing a product, but may "be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will." (*Seely, supra,* 63 Cal.2d at p. 18.) The rule serves the dual purposes of protecting the consumer's reasonable expectations, and preventing a manufacturer from suffering liability for damages of unknown and unlimited scope. (*Id.* at pp. 17-19.)

[4]In support of its argument, Fieldstone relied on the declaration of a mechanical engineer, in which he stated:

"It is my opinion that the pressed-steel lavatories suffer from a design defect involving the use of spot welds to seal the flange of the overflow channel to the bottom of the lavatory. The lavatories also suffer from a manufacturing defect insofar as there is a lack of or insufficient coating on the inside of the overflow channel to seal the crevice between the flange and the bowl. These defects allow water to come into contact with bare steel. The resulting damage is rusting in the overflow channel which corrodes the lavatory; the oxidation also causes the porcelain coating on the user side of the lavatory to 'pop' or chip off, which in turn creates an environment conducive to further rusting."

"The lavatories suffer from yet another manufacturing defect; there is insufficient coating of the edge of the overflow hole. Again, this allows water to come into contact with uncoated steel which then rusts; the rust undermines the integrity of the adjacent porcelain coating, causing it to chip off; when the porcelain is chipped off, more steel is exposed and more rusting ensues."

"In replacing the lavatories, it is also necessary to replace the pop-up and other items (such as the trap) which may become damaged or otherwise require replacement either because of the lavatory's damage or the repair/replacement process."

Fieldstone also relied on the declaration of a professional metallurgical and corrosion engineer, who held the same opinions regarding the nature of defects and damages.

Jurisdictions differ as to whether tort recovery is available where the sole physical injury is to the product itself. (2 Shapo, The Law of Products Liability (3d ed. 1994) ¶ 27; Annot., Strict Products Liability: Recovery for Damage To Product Alone (1989) 72 A.L.R.4th 12.) A number of courts have allowed such recovery, finding the rationales behind the adoption of strict liability apply whether damages are to the same or other property; a large number of other courts have ruled otherwise, reasoning that warranty theories provide the exclusive remedy; and, yet "[o]ther courts have recognized that there may be particular exceptions to the rule of nonrecovery for mere economic damage to the product itself, based on an analysis of the nature of the defect and the risks involved. Accordingly, these courts have ruled that strict liability in tort could serve as a basis of recovery where the damage occurred in a sudden or calamitous manner, since this was akin to ordinary tort claims which ordinarily involve sudden injuries or damage, as opposed to mere deterioration over a length of time." (72 A.L.R.4th at p. 16.)

California courts, with little or no analysis of the issue, have indicated that manufacturers may be strictly liable for physical injury to the product itself. In *Seely, supra,* 63 Cal.2d 9, the court held a manufacturer was liable in warranty, but not in tort, for plaintiff's lost profits incurred when a truck defect prevented its intended use. In dicta, however, the court indicated that, absent plaintiff's failure to prove causation, the manufacturer may have been strictly liable for physical injuries to the truck sustained in a rollover. (*Id.* at p. 19.) In *Gherna* v. *Ford Motor Co.* (1966) 246 Cal.App.2d 639, 649-650 [55 Cal.Rptr. 94], the court impliedly held there may be a strict liability remedy where an automobile was damaged by fire as a result of a wiring defect, and in *International Knights of Wine, Inc.* v. *Ball Corp.* (1980) 110 Cal.App.3d 1001 [168 Cal.Rptr. 301], the court indicated that wine spoilage caused by defective metal caps was property damage for purposes of strict liability.[5] (110 Cal.App.3d at pp. 1003, 1005; *id.* at p. 1008 (conc. & dis. opn. of Fleming, J.).)

Relying on the above cases, in *Sacramento Regional Transit Dist.* v. *Grumman Flxible, supra,* 158 Cal.App.3d at page 293, the court broadly

---

[5]Fieldstone's reliance on *Raven's Cove Townhomes, Inc.* v. *Knuppe Development Co.* (1981) 114 Cal.App.3d 783 [171 Cal.Rptr. 334] and *Kriegler* v. *Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224 [74 Cal.Rptr. 749] is misplaced as neither court discussed whether a manufacturer is liable in tort for damages solely to its product. " 'It is axiomatic that cases are not authority for propositions not considered.' [Citation.]" (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476], fn. omitted.) Further, in *Raven's Cove,* construction defects, including improper sprinkler placement, caused damage to landscaping and exterior siding, distinctly different property. In *Kriegler,* plaintiff alleged "physical damage sustained as the result of the failure of a radiant heating system." (*Kriegler* v. *Eichler Homes, Inc., supra,* 269 Cal.App.2d at p. 225.) There was no need for the court to discuss the nature of the damage because the distinction between "other property" and "economic loss" was not at issue.

stated that for purposes of strict liability, the "damaged property may consist of the product itself."[6] However, it cautioned that tort recovery in such a situation is precluded absent ". . . physical injury to the property apart from the manifestation of the defect itself. . . . The rule imposing strict liability in tort for damage to property presupposes (1) a defect and (2) *further* damage to plaintiff's property caused by the defect. When the defect and the damage are one and the same, the defect may not be considered to have caused physical injury. [Citation.]" (*Sacramento Regional Transit Dist.* v. *Grumman Flxible, supra,* 158 Cal.App.3d at p. 294, original italics, fn. omitted.) There, plaintiff was denied tort recovery where it, ". . . pled that it purchased busses from defendant, that the busses are latently defective in that the fuel tank support members are prone to cracking; [and] that the fuel tank support members of certain of its busses are already cracked . . . ." (*Id.* at p. 294, fn. 3.)

We conclude that here there was no injury to "other property" for purposes of imposing tort liability. The spot welding and inadequate coating were latent defects which made the sinks prone to rusting, chipping and premature deterioration. In other words, this case presents a routine situation in which a purchaser seeks replacement costs because a poorly designed and built product failed to meet its expectations. The doctrine of strict liability, however, is not a substitute for contract and warranty law where the purchaser's loss is the benefit of the bargain, and unless the parties specifically agree the product will perform in a certain way, the manufacturer is not responsible for its failure. (See *Seely, supra,* 63 Cal.2d at pp. 18-19.) Certainly, Fieldstone is a sophisticated consumer and could have specified a higher quality product; but, whether or not it is a "merchant" as defined by the Uniform Commercial Code, there is no justification here for imposing tort liability on manufacturers that guaranteed their products for only one year.[7] We reject Fieldstone's analysis, under which virtually every defective

---

[6]The court analyzed *International Knights of Wine, Inc.* v. *Ball Corp., supra,* 110 Cal.App.3d 1001 to have allowed tort recovery because the defective bottle caps damaged plaintiff's wine, which was the "other property." It held, "[t]o the extent that [*International Knights*] may stand for the proposition that a merchant may sue in products liability for physical injury to its property where that injury consists of nothing more than the product defect upon which liability is founded, we decline to follow it." (*Sacramento Regional Transit Dist.* v. *Grumman Flxible, supra,* 158 Cal.App.3d at p. 297.)

[7]As observed by the United States Supreme Court, "[w]hen a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." (*East River S.S. Corp.* v. *Transamerica Delaval* (1986) 476 U.S. 858, 871 [106 S.Ct. 2295, 2302, 90 L.Ed.2d 865].)

product evidencing deterioration of any nature would constitute "other property" for purposes of tort recovery. Such is not the law.[8]

## C. *Equitable Indemnity Claims*

■ While Fieldstone's complaint did not contain negligence causes of action against the manufacturers, it alleged their "breaches" created the sink defects, and therefore it was "entitled to complete or partial implied equitable indemnity and/or contribution" from them, "for any damages sustained . . . , as well as for . . . costs and expenses, including attorneys' fees, incurred in connection with its obligations to replace the defective sinks and perform related repairs." The trial court determined the manufacturers could not be liable for indemnity, because they were not liable for Fieldstone's economic damages under either a strict liability or negligence theory as a matter of law. We agree.

■ Equitable indemnity is a restitutionary concept; it is " ' "a right which enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." ' [Citation.]" (*Western Steamship Lines, Inc.* v. *San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 108 [32 Cal.Rptr.2d 263, 876 P.2d 1062].) "Indemnity does not invariably follow fault; it is premised on a joint legal obligation to another for damages." (*Id.* at p. 114.) Accordingly, " ' "[T]here can be no indemnity without joint and several liability by the prospective indemnitor and indemnitee . . . ." ' [Citations.]." (*GEM Developers* v. *Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 430 [261 Cal.Rptr. 626].)

As discussed above, strict liability has no application here. It is also well settled that *Seely, supra,* 63 Cal.2d 9, ordinarily precludes recovery for economic losses under a negligence theory. (*San Francisco Unified School Dist.* v. *W.R. Grace & Co., supra,* 37 Cal.App.4th at p. 1329.) ■ Fieldstone, however, alternatively argues its claim is viable under *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 806 [157 Cal.Rptr. 407, 598 P.2d 60] (*J'Aire*), in which the court held economic damages are recoverable in a negligence action, despite the absence of physical or personal injury, if the parties have a "special relationship." (*Id.* at p. 804; see *Ott* v. *Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1448 [37 Cal.Rptr.2d 790]; *Huang* v. *Garner* (1984) 157 Cal.App.3d 404, 422 [203 Cal.Rptr. 800].) The determination whether a special relationship exists is a matter of policy and involves

---

[8]Our holding makes it unnecessary to determine whether, in our view, tort recovery is best limited to the situation in which damages to the product itself where caused by a sudden or calamitous event—as held in many jurisdictions, and as was the case in both *Seely, supra,* 63 Cal.2d 9 and *Gherna* v. *Ford Motor Co., supra,* 246 Cal.App.2d 639.

the balancing of various factors, including "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." (*J'Aire, supra,* 24 Cal.3d at p. 804; *Huang* v. *Garner, supra,* 157 Cal.App.3d at p. 423.)

In an attempt to meet the *J'Aire* test, Fieldstone asserts it submitted evidence in opposition to the motions for summary judgment, establishing: (1) the manufacturers "knew that their bathroom sinks would be installed in middle-class homes . . . , [t]he sinks were specifically made for that purpose"; (2) the manufacturers "also knew that defects causing rusting and chipping would render the lavatories unserviceable and the homeowners would be harmed"; (3) "[t]here is no doubt here that the homeowners were damaged because the sinks had to be replaced for both aesthetic and functional reasons"; (4) "[t]he defective design and workmanship of the lavatories directly caused the unsightly, debilitating damage"; (5) "Briggs and [Allied] both knew their lavatories leaked, rusted and chipped, but warned no one"; and, (6) "[h]olding [the manufacturers] responsible for damages caused by the defective lavatories will encourage them to produce more sound products in the future, and discourage them from placing unsuitable products into the stream of commerce which flows straight into the laps of very unhappy consumers."

Fieldstone's analysis fails because the evidence does not suggest the transactions in question were intended to affect Fieldstone or the homeowners "in any way particular to [them], as opposed to all potential purchasers of the equipment. The absence of this foundation precludes a finding of 'special relationship' as required by *J'Aire*: to the extent the [product] was intended to affect [Fieldstone or the homeowners] in the same way as all retail buyers, this becomes a traditional products liability or negligence case in which economic damages are not available. [Citation.]" (*Ott* v. *Alfa-Laval Agri, Inc., supra,* 31 Cal.App.4th at pp. 1455-1456, fn. omitted.) We need not consider the remaining parts of the *J'Aire* test. "Even if [they] weighed in favor of finding a duty of care, we would still conclude that no duty existed. If a duty of care to avoid economic injury existed in the circumstances of the present case, every manufacturer would become an insurer, potentially forever, against economic loss from negligent defects in a product used for

its intended purpose. *J'Aire* neither requires nor supports such a radical departure from traditional notions of liability." (*Ibid.*)[9]

## D. *Express Warranty Claims*

■■■■ ■ ■ In opposition to the manufacturers' motions, Fieldstone argued they breached express warranties created by their promotional literature.[10] The trial court, however, found that as a matter of law Fieldstone failed to give reasonable notice as required by California Uniform Commercial Code section 2607, subdivision (3)(A). It provides, "[t]he buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy . . . ." (*Ibid.*) ■■■ On appeal, Fieldstone contends the notice requirement is inapplicable because there was no privity of contract between it and the manufacturers.[11]

Fieldstone relies on *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 61 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], in which the court held the notice requirement "is not an appropriate one for the court to adopt in actions by injured consumers against manufacturers with whom they have not dealt. [Citations.]" The court further explained, however, that " '[a]s applied to personal injuries, and notice to a remote seller, it becomes a booby-trap for the unwary. The injured consumer is seldom "steeped in the business practice which justifies the rule," [citation] and at least until he has had legal advice it will not occur to him to give notice to one with whom he has had no dealings.' [Citation.]" (*Ibid.*)

That is hardly the situation where, as here, plaintiff is a sophisticated development company which has built many thousands of homes over the last two decades. In fact, after *Greenman,* the court held the notice requirement applied to an implied warranty claim against a developer. It stated: "In

---

[9]Moreover, even where a duty exists, recovery for economic loss has been narrowly confined to situations where "the injury is not part of the plaintiff's ordinary business risk." (*J'Aire, supra,* 24 Cal.3d at p. 808; see *Transwestern Pipeline Co.* v. *Monsanto Co., supra,* 46 Cal.App.4th at p. 526.) Here, the potential that the sinks would rust and chip was within Fieldstone's business risk.

[10]As a general rule, privity of contract is a required element of an express breach of warranty cause of action. (*Burr* v. *Sherwin Williams Co.* (1954) 42 Cal.2d 682, 695 [268 P.2d 1041].) However, there is an exception where plaintiff's decision to purchase the product was made in reliance on the manufacturers' written representations in labels or advertising materials. (*Seely, supra,* 63 Cal.2d at p. 14; *Burr* v. *Sherwin Williams Co., supra,* 42 Cal.2d at p. 696; *Presiding Bishop* v. *Cavanaugh* (1963) 217 Cal.App.2d 492, 512-514 [32 Cal.Rptr. 144].)

[11]Interestingly, with regard to its implied warranty cause of action, Fieldstone contends it was in privity with the manufacturers.

treating common law warranties, it has been recognized that statutory standards should be utilized where appropriate. [Citations.] The requirement of notice of breach is based on a sound commercial rule designed to allow the defendant opportunity for repairing the defective item, reducing damages, avoiding defective products in the future, and negotiating settlements. The notice requirement also protects against stale claims. [Citation.] These considerations are as applicable to builders and sellers of new construction as to manufacturers and dealers of chattels." (*Pollard* v. *Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 380 [115 Cal.Rptr. 648, 525 P.2d 88].) *Presiding Bishop* v. *Cavanaugh, supra,* 217 Cal.App.2d 492, upon which Fieldstone also relies, was decided several years before *Pollard,* and is factually dissimilar, as there, a "person in the position of the [Bishop] ordinarily would not be aware of his rights as against the manufacturer until he had received legal advice predicated upon an adequate investigation of the facts as to the manufacturer's participation in the chain of events culminating in damage to the plaintiff." (*Id.* at p. 515.) Again, such is not the situation here, and we accordingly conclude the notice provision applies.

Alternatively, Fieldstone contends it gave the manufacturers reasonable notice. It submitted evidence of the following: Fieldstone's sink replacements "began in January 1988. The lavatory replacements were 66 for the year in 1988, with a slowly increasing frequency of replacement in 1989 (158 for the year) and 1990 (209 for the year). However, in 1991, replacements more than equalled what they had been in 1988, 1989 and 1990 combined—replacements in 1991 were 460 for the year." Initially, Fieldstone believed the sink problems were associated with homeowner abuse; however, by 1989 it "believed the rusting and chipping to be a problem with the lavatories," but it was unaware "of the origin or cause of the problem." Fieldstone only learned of the specific nature of the sink defects after it filed this action in September 1993. On March 14, 1991, Fieldstone's then customer service manager, Robert Chappell, sent Briggs a letter notifying it of the sink problems. It also sent a letter to a person at Delco Products whom Chappell "vaguely recall[ed] . . . was a [CR/PL] representative." There is no evidence Fieldstone apprised Allied of any problem before it filed this action.

The question of whether notice was reasonable must be determined from the particular circumstances and, where but one inference can be drawn from undisputed facts, the issue may be determined as a matter of law. (*Whitfield* v. *Jessup* (1948) 31 Cal.2d 826, 832 [193 P.2d 1]; *Ice Bowl, Inc.* v. *Spalding Sales Corp.* (1943) 56 Cal.App.2d 918, 922 [133 P.2d 846].) Here, we conclude from the undisputed facts that Fieldstone failed to give the manufacturers reasonable notice of breach of any express warranties. (See *Davidson* v. *Herring H. M. Safe Co.* (1955) 131 Cal.App.2d Supp. 874, 877 [280

P.2d 549] [delay of 15 months unreasonable as matter of law]; *Ice Bowl, Inc.* v. *Spalding Sales Corp.*, *supra*, 56 Cal.App.2d at pp. 921-922 [delay of four months unreasonable as matter of law].) Although perhaps not aware of the specific causes, Fieldstone knew the sinks were defective for three years before giving notice to Briggs and CR/PL; it gave Allied no indication of a problem for five years, until it filed this lawsuit. (See *Pollard* v. *Saxe & Yolles Dev. Co.*, *supra*, 12 Cal.3d at p. 380 [ignorance of specific nature of defect does not excuse failure to give notice].)

E. *Implied Warranty Claims*

■ The trial court determined as a matter of law, Fieldstone's implied warranty claims were meritless because it had no privity with the manufacturers. We conclude there was no error.

"Vertical privity is a prerequisite in California for recovery on a theory of breach of the implied warranties of fitness and merchantability. [Citations.]" (*U.S. Roofing, Inc.* v. *Credit Alliance Corp.* (1991) 228 Cal.App.3d 1431, 1441 [279 Cal.Rptr. 533].) "[T]here is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale. [Citations.]" (*Burr* v. *Sherwin Williams Co.*, *supra*, 42 Cal.2d at p. 695.)

While conceding it did not contract with the manufacturers, Fieldstone argues that because at least Briggs and CR/PL "make sales calls on developers such as Fieldstone," and "Fieldstone's plumbers special ordered shipments of lavatories for use in Fieldstone's specifically designated projects," "Fieldstone is a purchaser from respondent as much as it is from its plumbers . . . within the overall context of the relationships among the parties." We reject such a notion. Further, Fieldstone's reliance on *Presiding Bishop* v. *Cavanaugh*, *supra*, 217 Cal.App.2d 492, in arguing the "overly technical" privity requirement should not be applied, is misplaced as that case involved only an express warranty cause of action. As discussed above, privity is not required where plaintiff relied on defendant's promotional materials. Other cases Fieldstone cited are similarly inapplicable.[12]

We also reject Fieldstone's argument the court's ruling was erroneous as to CR/PL because it did not raise lack of privity as a basis for its motion for

_____

[12]For instance, in *Peterson* v. *Lamb Rubber Co.* (1960) 54 Cal.2d 339 [5 Cal.Rptr. 863, 353 P.2d 575], plaintiff was injured by a dangerous product purchased by his employer from defendant. Under that circumstance, the employee "should fairly be considered to be in privity to the vendor-manufacturer with respect to the implied warranties of fitness for use and of merchantable quality . . . ." (*Id.* at p. 348.) In *U.S. Roofing, Inc.* v. *Credit Alliance Corp.*, *supra*, 228 Cal.App.3d at page 1442, parties were in privity for purposes of implied warranty claims where there was considerable evidence they dealt directly with each other vis-à-vis the purchase; in *Gilbert Financial Corp.* v. *Steelform Contracting Co.* (1978) 82 Cal.App.3d 65, 69 [145 Cal.Rptr. 448], the issue of privity was not decided because plaintiff

summary judgment. The issue was fully briefed by the other manufacturers and Fieldstone, and it was undisputed there was no vertical privity. ▄▄▄ "[W]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record." (*Blue Chip Enterprises, Inc.* v. *Brentwood Sav. & Loan Assn.* (1977) 71 Cal.App.3d 706, 712 [139 Cal.Rptr. 651].)[13]

### DISPOSITION

The judgments are affirmed. Fieldstone to bear the manufacturers' costs on appeal.

Nares, J., and Haller, J., concurred.

---

was a third party beneficiary to the parties' written contract; *Atlas Vegetable Exchange, Inc.* v. *Bank of America* (1970) 10 Cal.App.3d 868 [89 Cal.Rptr. 274], is not a warranty case and *Odell* v. *Frueh* (1956) 146 Cal.App.2d 504, 508 [304 P.2d 45, 76 A.L.R.2d 345] is another express warranty case based on plaintiff's reliance on the manufacturer's express representations, and thus privity was not required.

[13]Additionally, we find no merit to Fieldstone's contention the trial court erred in granting Allied's joinder in the motions of Briggs and CR/PL, because it failed to submit its own evidence in support. The trial court determined the joinder was insufficient under local rule, but determined, "in light of the rulings in [Briggs's and Allied's] motions for summary judgment, . . . despite the procedural errors in Allied's joinder, the motion for summary judgment should be granted as a matter of law based on [the rulings on the other motions]." We find no fault, as under the circumstances of this case, the same facts were germane to all motions, and to require further proceedings would cause substantial waste of time and resources.