112 Cal.Rptr.2d 230 (2001)
92 Cal.App.4th 847
Dorothy NASH et al., Plaintiffs and Appellants,
v.
Edward R. MacDONALD et al., Defendants and Respondents.
No. A090825.
Court of Appeal, First District, Division Four.
October 2, 2001.
Review Denied January 3, 2002.[*]
*231 Gary P. Oswald, San Rafael, Elizabeth E. Bader, San Francisco, Appellants.
Eisen & Johnston, Jay-Allen Eisen, Marian M. Johnston, K. Greg Peterson, Jeffory J. Scharff, Sacramento, Frederick A. Belt, Placerville, for Respondent Julia I. Carrington.
Edward R. MacDonald, in pro. per.
KAY, J.
Plaintiffs appeal from the judgment determining they are entitled to recover nothing from defendants for allegedly causing damage to plaintiffs' real property. The judgment was entered after the trial court had previously made an order granting defendants summary adjudication on plaintiffs' cause of action for strict liability. The judgment itself determines that plaintiffs' remaining causes of action were time-barred by Code of Civil Procedure section 337.1,[1] which the trial court identified as the applicable statute of limitations for patent defects of real property. Plaintiffs contend the trial court erred in: (1) determining that there was no legal basis for their strict liability claim; and (2) not treating the defect as latent, and thus governed by section 337.15. We agree with plaintiffs on both points and therefore reverse.

BACKGROUND
This appeal is simplified by considerable agreement on the salient facts. Defendants are the owners of a subdivision in Solano County. Defendants agreed with the county (in July of 1983) that the subdivision would include streets and roadway grading. Five years later defendants became responsible for a "Road Maintenance Agreement" by which they undertook to maintain a private road called Marie Lane in order to provide ingress and egress to three specified lots. A paved road on Marie Lane was completed by May of 1989. *232 The contractor that built the road also agreed to perform excavation grading, and "erosion control," and to construct "storm drain and water systems." The subdivision was substantially completed on August 15, 1989. Defendants sold the specified lots in the subdivision to plaintiffs from October 1989 through November 1990.
By February of 1993, before any of plaintiffs had constructed a residence on their lots, they noticed that drainage was inadequate, the subsurface support for the road had not been compacted properly, the asphalt surface of the road was cracking, and that adjoining slopes had been cut so steeply as to pose a danger.
Plaintiffs commenced this action by filing a complaint against defendants on January 24, 1996. In their first amended complaint plaintiffs set forth causes of action for strict liability, negligence, breach of contract and of implied warranties, and declaratory relief.
Defendants Albert and Julia Carrington moved for summary judgment or summary adjudication. Summary judgment was denied, but summary adjudication was granted as to plaintiffs' strict liability cause of action. The trial court stated in its order that "there can be no recovery for purely economic losses. (Fieldstone Co. v. Briggs Plumbing Products, Inc. (1997) 54 Cal. App.4th 357, 363-366, 62 Cal.Rptr.2d 701.) The first amended complaint seeks damages for the roads themselves, and not for any physical injuries to persons or to other property."
As recited in the judgment, the parties agreed that the remaining issues would be bifurcated. Defendants' affirmative defenses were the subject of a two-day bench trial. The relevant portion of the judgment reads: "Code of Civil Procedure section 337.1 is the statute of limitations applicable to the plaintiffs' claims. The evidence shows that ... the ... subdivision ... was substantially completed on August 15, 1989. From the evidence it is clear that all of plaintiffs' alleged defects ... were apparent by reasonable inspection by no later than February of 1993, and had clearly manifested themselves by that date. The alleged defects therefore became patent during the first four years after substantial completion. The plaintiffs accordingly had until August 15, 1994 to file suit as to the alleged defects but failed to do so, as the instant action was not filed until January 24, 1996. Code of Civil Procedure section 337.1(b); see also Tomko Woll Group Architects, Inc. v. Superior Court (1996) 46 Cal.App.4th 1326, 1336 [54 Cal.Rptr.2d 300]; Sanchez v. Swinerton & Walberg (1996) 47 Cal. App.4th 1461, 1471 [55 Cal.Rptr.2d 415]. The plaintiffs had a reasonable period of time in which to act after gaining the knowledge necessary to act and before the point of final termination of their rights was reached, and plaintiffs failed to act within that time period. [¶] Based on these facts the plaintiffs' claims and each of them are barred in their entirety under Code of Civil Procedure section 337.1, the present action having been filed well after the applicable statute of limitations had expired. In light of the trial court's findings concerning the applicability of the statute of limitations, no other findings concerning the other issues tried before this court are necessary."

I

(A)
Before proceeding to the merits of plaintiffs' claim that the trial court erred in summarily adjudicating their strict liability cause of action, we must first address defendant *233 MacDonald's argument that plaintiffs have waived their right to seek review of the ruling. The waiver argument has two parts.
First, MacDonald posits that the summary adjudication order is not mentioned in plaintiffs' notice of appeal and does not figure in the judgment, which discusses only the statute of limitations issue. This reasoning is not persuasive. The summary adjudication order was properly omitted from the notice of appeal because it is not an appealable order. (E.g., Gaillard v. Natomas Co. (1989) 208 Cal.App.3d 1250, 1255, fn. 1, 256 Cal.Rptr. 702.) Such an order is deemed merely interim or preliminary to a final judgment; appeal from the judgment will permit review of the order. (E.g., In re Matthew C. (1993) 6 Cal.4th 386, 393;, 24 Cal.Rptr.2d 765, 862 P.2d 765, 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 58, p. 113, § 119, p. 183.) It is true that the "Judgment" filed by the trial court at the conclusion of the trial on the statute of limitations is largely devoted to that issue, and it does not mention the earlier summary adjudication ruling. Nevertheless, it is entitled a judgment, and it concludes with the following language: "Judgment is herewith entered in favor of defendants, and each of them, and plaintiffs are to recover nothing on their claims. Defendants, as the prevailing parties, are entitled to recover their costs from plaintiffs." It was entered as a judgment, and notice of that entry was given to the parties. It looks like a final judgment, was treated by the parties as a final judgment, and, MacDonald admits, its statute of limitations conclusion applied to all of plaintiffs' causes of action. The document entered by the court meets the statutory definition of a judgment (§ 577). We shall therefore treat it as such for purposes of this appeal.
MacDonald's second argument is that when plaintiffs appeared to argue the tentative ruling on the Carrington summary judgment/summary adjudication motion, they argued another aspect of the court's ruling, and, in response to a question from the bench, conceded they were not contesting the ruling as to their strict liability cause of action. We are disinclined to treat what may have been a tactical acquiescence as a waiver of plaintiffs' right to seek review of the ruling. Their acquiescence does not meet any of the traditional criteria of waiver (see 9 Witkin, supra, Appeal, §§ 208-222, pp. 263-280) and there is no reason to create a new one here. The logic of MacDonald's argument is that a losing party must appear and argue against every adverse aspect of every ruling in courts using a tentative ruling system, lest the party forfeit the right to seek review of the ruling on appeal. This would hardly advance the economical use of judicial resources, nor would counsel appreciate being compelled to argue in person against all rulings that might possibly figure in any eventual appeal.

(B)
Plaintiffs' perceived damages are not for their individual lots, but to Marie Lane, the access road for those lots. Plaintiffs' position is that the road was improperly compacted, that it suffers from inadequate drainage, and that adjacent slopes are excessively steep. Marie Lane was built at the insistence of Solano County so that lot holders would have a means of ingress and egress to and from their lots. Damage to Marie Lane is therefore damage to plaintiffs' lots.[2]
*234 Beginning with the decision of Division Two of this Court in Kriegler v. Eichler Homes, Inc. (1969) 269 Cal.App.2d 224, 74 Cal.Rptr. 749, it quickly became established law in California that the doctrine of strict liability applied to mass developers of residential housing. (See Stearman v. Centex Homes (2000) 78 Cal.App.4th 611, 613, 92 Cal.Rptr.2d 761 and decisions cited.) Within a matter of months after Kriegler, strict liability was extended by Avner v. Longridge Estates (1969) 272 Cal. App.2d 607, 77 Cal.Rptr. 633 to defects in the lots that were created by human hand. There is abundant authority that strict liability may be imposed for precisely the sort of misfeasance allegedly suffered by plaintiffs. (E.g., Fleck v. Bollinger Home Corp. (1997) 54 Cal.App.4th 926, 63 Cal. Rptr.2d 407 [subsidence caused by uncompacted fill]; Raven's Cove Townhomes, Inc. v. Knuppe Development Co. (1981) 114 Cal.App.3d 783, 171 Cal.Rptr. 334 [improper fill & drainage of landscaping areas]; Avner v. Longridge Estates, supra [improper slope compaction & inadequate drainage].)
Shortly after it recognized strict liability in Greenman v. Yuba Power Products, Inc. (1963) 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, our Supreme Court held in Seely v. White Motor Co. (1965) 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 that the doctrine would not allow recovery for purely commercial or economic loss. Stearman v. Centex Homes, supra, 78 Cal. App.4th 611, 92 Cal.Rptr.2d 761, considered the issue of "whether a plaintiff can recover under strict liability when a defect in one component part of a house causes injury to other component parts of the house, but not to persons or property apart from the structure" or whether "such damage constitutes nothing more than `injury to the product itself,' a loss for which strict liability compensation is barred by the economic loss rule of Seely v. White Motor Co....." (Id. at pp. 613-614, 92 Cal.Rptr.2d 761.) We cannot improve upon the Stearman discussion of Seely:
"In Seely ... widely recognized as the progenitor of the economic loss rule, the court held a commercial trucker who purchased a defective truck was entitled to breach of express warranty damages for lost profits from his heavy-duty hauling business and for money paid on the purchase price, but could not recover these economic losses under strict product liability. [Citation.] Tracing the development of warranty and strict liability law, the Seely court observed `warranty "grew as a branch of the law of commercial transactions and was primarily aimed at controlling the commercial aspects of these transactions." [Citations.]' [Citation.] It concluded warranty rules `function well in a commercial setting,' [Citation.] Warranty adequately protected the Seely plaintiff, a trucker who `could have shopped around until he found the truck that would fulfill his business needs,' and `could be fairly charged with the risk that the product would not match his economic expectations, unless the manufacturer agreed that it would.' [Citation.]
"On the other hand, the Seely court reasoned, strict liability for purely economic losses would unjustifiably expose the manufacturer `for damages of unknown and unlimited scope.' [Citation.] Explaining, it observed commercial enterprises have widely varying needs which are ordinarily communicated to the dealer, not the manufacturer, who would be liable even *235 though it never agreed the product would perform as a particular purchaser needed it to perform. [Citation.] In Seely, for instance, the truck proved unsatisfactory for the plaintiffs heavy-duty hauling business, but performed well for the subsequent purchaser, who, after the dealer made only minor alterations to the truck, drove it 82,000 miles for a less demanding enterprise. [Citation.] For this reason and others that we need not reiterate, the court found, `Without an agreement, defined by practice or otherwise, defendant should not be liable for these commercial losses.' [Citation.]
"The Seely court did not end its discussion there, however. It added a final paragraph regarding the plaintiffs contention the trial court erred in denying strict liability recovery for physical damage to the truck itself. Significantly, the court agreed with the plaintiffs argument that `even though the law of warranty governs the economic relations between the parties, the doctrine of strict liability in tort should be extended to govern physical injury to plaintiff's property, as well as personal injury.' [Citation.] The court found `[p]hysical injury to property is so akin to personal injury that there is no reason to distinguish them. [Citations.]' [Citation.] The plaintiff was barred from recovering strict liability damages for physical injury to the truck not by the economic loss rule, but only because he failed to prove causation. [Citation.]" (Stearman v. Centex Homes, supra, 78 Cal.App.4th 611, 616-617, 92 Cal.Rptr.2d 761.)
The Stearman court then undertakes an exhaustive analysis of California authorityincluding this court's decision in San Francisco Unified School Dist. v. W.R. Grace & Co. (1995) 37 Cal.App.4th 1318, 44 Cal.Rptr.2d 305and discerns that among the category of damages precluded as purely economic loss are claims for anticipated replacement or repair costs; if, however, actual physical property damage has been caused by the product, including damage to the product itself, replacement or repair costs are recoverable as strict liability damages. (Stearman v. Centex Homes, supra, 78 Cal.App.4th 611, 617-623, 92 Cal.Rptr.2d 761.)
The sole authority cited by the trial court when it granted summary adjudication against plaintiffs was Fieldstone Co. v. Briggs Plumbing Products, Inc., supra, 54 Cal.App.4th 357, 62 Cal.Rptr.2d 701. In Fieldstone the Court of Appeal affirmed a determination by the trial court that the cost of replacing defective sinks constituted a solely economic loss for which recovery in strict liability was not permitted. (Id. at pp. 363-367, 62 Cal.Rptr.2d 701.) There is no need to analyze all aspects of this holding because Fieldstone is obviously factually distinguishable; Fieldstone does not deal with real property, nor does it address the established line of authority that residential real property lots are subject to strict liability. Moreover, the defect in the sinks in Fieldstone consisted of damage only to the sinks themselves, and did not damage any other property. As will be shown in the following paragraph, plaintiffs suffered damage beyond the defects themselves. Sinks can be replaced; lots cannot. Finally, it is noteworthy that the most recent decision in this area by our Supreme Court makes favorable reference to Avner, Stearman, and our decision in W.R. Grace & Co. (Aas v. Superior Court (2000) 24 Cal.4th 627, 639-642, 101 Cal.Rptr.2d 718, 12 P.3d 1125.)
The only additional discussion required is whether plaintiffs submitted sufficient evidence in opposition to the summary adjudication motion to establish the existence of a triable issue of physical damage to their property. This determination will be made solely on the basis of evidence submitted *236 in connection with that motion, without reference to evidence or testimony received at the subsequent trial. (E.g., Aloha Pacific, Inc. v. California Ins. Guarantee Assn. (2000) 79 Cal.App.4th 297, 307, 93 Cal.Rptr.2d 148; Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co. (1987) 189 Cal.App.3d 1072, 1086-1087, 234 Cal.Rptr. 835.) Plaintiffs produced evidence that the defective compacting caused damage to Marie Lane, which forms an actual part of the lot belonging to one of the plaintiffs, and is an incorporeal hereditament right of access for the other two lots. Plaintiffs produced evidence that inadequate drainage also caused damage to Marie Lane. Moreover, plaintiffs produced evidence that erosion from too steeply cut slopes contribute to inadequate drainage. This was ample evidence of physical damage caused by defects in the property defendants had sold to plaintiffs.

II
Defendants persuaded the trial court that the applicable statute of limitations was section 337.1, which establishes that an action for injury to personal or real property caused by a "patent deficiency" in the "construction of an improvement to real property" must be commenced within four years of "the substantial completion" of the improvement. Plaintiffs were unable to convince the trial court to apply section 337.15, which provides that an action for injury to personal or real property caused by a "latent deficiency" in the "construction of an improvement to real property" must be commenced within ten years of "the substantial completion" of the improvement. The primary issue on this appeal is which statute governs.
A patent defect is one "which is apparent by reasonable inspection" (§ 337.1, subd. (e)), while a latent defect "is not apparent by reasonable inspection" (§ 337.15, subd. (b)). Division Three of this Court has noted that policy considerations "have led to a broader definition of latent defect.... [T]he cases have given `patent' a narrow application and its antonym, `latent,' a broad one." (Chadwick v. Fire Ins. Exchange (1993) 17 Cal.App.4th 1112, 1123, 21 Cal.Rptr.2d 871.) This approach is reflected in how a defect is classified. "The test to determine whether a deficiency is patent is based on the average consumer's reasonable expectations. The test is thus objective rather than subjective; it is not applied to each individual user." (Tomko Woll Group Architects, Inc. v. Superior Court (1996) 46 Cal. App.4th 1326, 1339, 54 Cal.Rptr.2d 300.) "The use of an objective test for a patent defect effectuates the broad protection afforded contractors by the statute [i.e., section 337.1] by eliminating the possibility that a defect could be deemed patent as to some plaintiffs and latent as to others depending on the circumstances of each person injured as a result of the defect." (Geertz v. Ausonio (1992) 4 Cal.App.4th 1363, 1370, 6 Cal.Rptr.2d 318.)
The scope for subjective considerations is slightly greater as to latent defects, but not by much. The leading treatise in the field of real property has a cogent and accurate synopsis: "[W]hether a defect is `latent' or `patent' is a question of fact as an objective test determined by the totality of the circumstances based on the common experience of the average consumer, unless reasonable minds could not differ on the issue. Whether the plaintiff should have discovered a `patent' defect depends on the nature of the defect and the experience and expertise of the user/plaintiff. A `patent' defect is one that is `open, evident or obvious,' and a `latent' defect is one that is `hidden,' dormant or `potential'-not clearly apparent except upon the most searching examination." (8 *237 Miller & Starr, Current Law of Cal. Real Estate (2d ed.1990) § 25:36, p. 347, fn. omitted.) "In order to be `patent,' not only must the defect be apparent, the owner must know, or have a reasonable opportunity to discover, the cause of the defect." (Id. at p. 348, italics omitted; see also Geertz v. Ausonio, supra, 4 Cal.App.4th 1363, 1368 & fn. 3, 6 Cal.Rptr.2d 318; Renown, Inc. v. Hensel Phelps Construction Co. (1984) 154 Cal.App.3d 413, 420-421, 201 Cal.Rptr. 242.)
Our Supreme Court has explained how section 337.15 is applied: "With judicial recognition that under some circumstances cause of action for negligence, product liability, or breach of warranty may not arise until discovery, the Legislature has responded by enacting statutes of limitation which require suit be filed within the shorter of two periods, one measured from the date of discovery and a second, longer period measured from the event giving rise to the cause of action. Section 337.15, read together with Code of Civil Procedure sections 337 and 338, enacts such a two-step limitation: actions founded upon a latent defect in the development of real property must be filed within three or four years of discovery, depending on whether the action rests on breach of warranty or negligence, but in any case within ten years of the date of substantial completion of the improvement." (Regents of University of California v. Hartford Acc. & Indent. Co. (1978) 21 Cal.3d 624, 640-641,147 Cal.Rptr. 486, 581 P.2d 197, fn. omitted.)
The obvious starting point is to determine whether the defect is latent or patent. If the defect was patent, the trial court correctly determined that plaintiffs' suit is governed by section 337.1. If, however, the defect was latent, section 337.15 applies. If section 337.15 applies, the next step is to identify the date at which the defect was discovered. The date of discovery commences the running of the statute of limitations for a specific cause of action. The final step would be to decide whether plaintiffs' causes of action were timely before the limitation period(s) expired.
Although the trial court did not make an express finding that the defect was patent, that conclusion is the ineluctable predicate for the court's determination that section 337.1 applied. Defendants adopt different approaches to defend this conclusion. Defendant Carrington argues that the defects were patent because they were in existence at the time of substantial completion. Defendant MacDonald argues that the defects were patent because they would be by reasonable inspection and were in fact known by plaintiffs no later than 1993. Neither of these approaches is persuasive.
The most pertinent evidence is the uncontradicted expert testimony of Glen Roycroft, a civil and geotechnical engineer. He testified that even an expert such as himself, once aware of the manifestation or consequence of defective improvements, would still have to ascertain a number of possible causes. For example, Roycroft believed that observable cracking on Marie Lane could be caused by "inadequate pavement thickness design," expansive soils, "inadequate preparation and compaction of the subgrade," plus "premature weathering and aging." Having examined the scene, Roycroft believed that inadequate drainage above the cut slopes led to erosion runoff from the slopes; the runoff blocked drainage alongside the road and in turn eroded unstable landfill on which the road was placed. Mr. Roycroft was of the opinion that these defects could not have been discovered or appreciated by laypersons. For defendant MacDonald to argue otherwise requires plaintiffs to be deemed to have the constructive knowledge of the defect according to this logic; if plaintiffs had examined the lots they would have known that rain of sufficient length and *238 force would cause hillside erosion that would overload the existing drainage capacity and cause damage to a road on imperfect fill. This sort of imputed knowledge is based on clairvoyance, not reasonable inspection by laypersons as measured by an objective standard. (See Tomko Woll Group Architects, Inc. v. Superior Court, supra, 46 Cal.App.4th 1326,1339, 54 Cal.Rptr.2d 300; Geertz v. Ausonio, supra, 4 Cal.App.4th 1363, 1370, 6 Cal.Rptr.2d 318.)
Moreover, mere knowledge that something is amiss does not satisfy either statute. As Division Three of this Court has stated, "under sections 337.1 and 337.15, even actual observation of a deficiency or its immediate effects will not make it patent if the average consumer would not have fully understood its physical cause or have known it to be a deficiency." (Chadwick v. Fire Ins. Exchange, supra, 17 Cal. App.4th 1112, 1123, 21 Cal.Rptr.2d 871.) This statement is not isolated or aberrational; the Court of Appeal for the Sixth Appellate District had earlier stated that "if a reasonable inspection would reveal only the manifestation of a defect but not its cause, i.e., the defect itself, then the defect is not necessarily patent." (Geertz v. Ausonio, supra, 4 Cal.App.4th 1363, 1368, 6 Cal.Rptr.2d 318.)
Even if the defects were intrinsic to Marie Lane and the cut slopes from the date of completion that does not make them patent. The perils they presented were not "`open, evident or obvious'" but "`hidden,' dormant or `potential.'" (8 Miller & Starr, supra, § 25:36, p. 347.) The uncontradicted evidence from Roycroft was to the effect that plaintiffs could not have discovered the defects from a reasonable inspection; the uncontradicted evidence was that plaintiffs had no inkling of any problem earlier than 1993, when a rainstorm in 1993 produced what was called "the washout." The only conclusion that may reasonably be drawn, both as a matter of fact and as a matter of law, is that the defects that caused damage to plaintiffs' property were latent. This conclusion is also the only one that is consistent with the statement by the court in the judgment that the defects "... were apparent by reasonable inspection by no later than February of 1993, and had clearly manifested themselves by that date."
Defendants are unable to point to any authority holding that, for purposes of either section 337.1 or 337.15, a latent defect is transmuted into a patent defect simply because the defect causes manifest damage. Neither of the two decisions cited by the trial court support such a result. In Sanchez v. Swinerton & Walberg Co., supra, 47 Cal.App.4th 1461, 55 Cal.Rptr.2d 415, pooled rainwater on a stairway landing was treated as a visible danger and thus a patent defect. In Tomko Woll Group Architects, Inc. v. Superior Court, supra, 46 Cal.App.4th 1326, 54 Cal.Rptr.2d 300, raised patio paving stones were treated as visibly known and thus a patent defect. Clearly, the motivating theme of Sanchez and Tomko is that a reasonable inspection by ordinary users would have disclosed the defect. As shown by the previous discussion, that conclusion is not possible here.
Plaintiffs' causes of action are therefore governed by the principle that the limitation period(s) began to run once they discovered they had suffered harm, so long as ten years have not elapsed since substantial completion of the improvement. (Regents of University of California v. Hartford Acc. & Indem. Co., supra, 21 Cal.3d 624, 640-641, 147 Cal.Rptr. 486, 581 P.2d 197.) The limitation period is three years for plaintiffs' causes of action for strict liability (§ 338, subd. (b); Avner v. Longridge Estates, supra, 272 Cal.App.2d 607, *239 615-618, 77 Cal.Rptr. 633) and for negligence. (§ 338, subd. (b); Regents of University of California v. Hartford Acc. & Indent. Co., supra, at p. 641, 147 Cal.Rptr. 486, 581 P.2d 197.) Their causes of action for breach of contract and implied warranties are subject to a four-year period. (§ 337, subd. 1; Pollard v. Saxe & Yolles Dev. Co. (1974) 12 Cal.3d 374, 378-379, 115 Cal.Rptr. 648, 525 P.2d 88; Aced v. Hobbs-Sesack Plumbing Co. (1961) 55 Cal.2d 573, 584-585, 12 Cal.Rptr. 257, 360 P.2d 897.) Plaintiffs' cause of action for declaratory relief is governed by the statute of limitations pertaining to the underlying claims for negligence and breach of contract. (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 625, p. 804; Maguire v. Hibernia S. & L. Soc. (1944) 23 Cal.2d 719, 733, 146 P.2d 673.) The trial court found that substantial completion occurred on August 15, 1989, and that plaintiffs had notice of the defects in February of 1993; plaintiffs do not dispute either of these findings. Plaintiffs' initial complaint was filed on January 24, 1996, within the shortest limitation period applicable and the ten-year period from substantial completion established by section 337.15. All of plaintiffs' causes of action were therefore timely.
The judgment is reversed.
We concur: REARDON, Acting P.J., and SEPULVEDA, J.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of Court  Rules 976 and 977).
[1] Statutory references are to the Code of Civil Procedure unless otherwise indicated.
[2] "In any event the doctrine that strict liability extends to bystanders (Elmore v. American Motors Corp., [1969] 70 Cal.2d 578, 586-587 [75 Cal.Rptr. 652, 451 P.2d 84]), is ample to protect plaintiffs." (Stuart v. Crestview Mut. Water Co. (1973) 34 Cal.App.3d 802, 811, 110 Cal.Rptr. 543.)